348 F.2d 693
 NECCHI S.p.A., Plaintiff-Appellant,
v.
NECCHI SEWING MACHINE SALES CORP., Defendant-Appellee.
In the Matter of the Arbitration of Controversies, between
NECCHI SEWINGMACHINE SALES CORP.,
Petitioner-Appellee, and NECCHI S.p.A.,
Respondent-Appellant.
 Nos. 336, 337, Dockets 29339, 29340.
 United States Court of Appeals Second Circuit.
 Argued March 15, 1965.
Decided July 15, 1965.
 
 David A. Botwinik, New York City (Fink & Pavia, New York City, on the brief) (Murray Mogel, New York City, of counsel), for respondent-appellant.
 Samuel B. Herbst, New York City (Herbst & Herbst, New York City, on the brief) (Allan D. Goodridge, New York City, of counsel), for petitioner-appellee.
 Before LUMBARD, Chief Judge, and MOORE and MARSHALL, Circuit Judges.
 MARSHALL, Circuit Judge:
 
 
 1
 From 1948 through 1963, Necchi Sewing Machine Sales Corporation (hereinafter 'the Sales Corp.') was the exclusive American distributor of sewing machines manufactured by Necchi. This relationship was based on a series of contracts; the one involved in these appeals was executed on July 18, 1961 and amended by a subsequent agreement dated January 18, 1962 whereby the exclusive distributorship was extended until December 31, 1963.
 
 
 2
 The 1961 agreement provided that 'All matters, disputes or disagreements arising out of or in connection with this Agreement shall be finally settled' by arbitration, and this provision was invoked when the relations between Necchi and the Sales Corp. deteriorated at the end of 1963 upon the refusal of Necchi to renew the exclusive distributorship with the Sales Corp.[1] In January and March of 1964 the Sales Corp. demanded that certain disputes be arbitrated, and on May 22 of that year it sent a letter to Necchi, set out in the appendix, detailing its demand for arbitration. The arbitration provision gave the party upon whom a demand to arbitrate was served thirty days to appoint an arbitrator; and this period expired on June 22. On that date, having not yet appointed an arbitrator, Necchi commenced an action in the District Court for the Southern District of New York. Jurisdiction was based on diversity of citizenship, 28 U.S.C. 1332, and, pursuant to 28 U.S.C. 2201, Necchi sought a declaratory judgment that the items tendered by the Sales Corp. for arbitration were not arbitrable. On the same day, June 22, the Sales Corp., pursuant to sections 4 and 5 of the Federal Arbitration Act,9 U.S.C. 4, 5, petitioned the District Court for the Southern District of New York to appoint a second arbitrator and to direct Necchi to proceed to arbitration. The petition alleged diversity jurisdiction and also that the 1961 agreement evidenced transactions in interstate and foreign commerce.
 
 
 3
 In an order dated September 3, 1964 the District Court dismissed without prejudice Necchi's declaratory judgment action and granted the petition of the Sales Corp. Necchi was ordered to proceed to arbitration and to appoint an arbitrator within twenty days, in default of which an arbitrator would be appointed by the court. Notices of appeal were timely filed and served by Necchi in both proceedings. We affirm the order of the District Court insofar as it dismisses, without prejudice, Necchi's declaratory judgment action, for, as the District Court correctly reasoned, the issues raised in that action can also be determined in the proceeding initiated by the Sales Corp. It was within the discretion of the District Court to dismiss the parallel and duplicative action seeking declaratory judgment, see Dr. Beck & Co. G.M.B.H. v. General Electric Co., 317 F.2d 538, 539 (2 Cir. 1963). But insofar as the order of the District Court directs Necchi to proceed to arbitration, we affirm in part and reverse in part.
 
 
 4
 The basic flaw in the order compelling Necchi to arbitrate stems from the approach of the District Court. The Court declined to decide whether the nine items listed in the Sales Corp.'s letter were 'matters, disputes or disagreements arising out of or in connection with' the agreement. Instead the court took the position that this decision was to be made by the arbitrators, reasoning that 'the broad scope of the arbitration provisions precludes us from (making the) preliminary inquiry as to whether the nine listed items arise 'out of or in connection with the agreement." This was error, and quite clearly so. An order under the Federal Arbitration Act compelling a party to arbitrate is simply an order granting specific performance of an arbitration provision, Kulukundis Shipping Co., S/A v. Amtorg Trading Corp., 126 F.2d 978, 986 (2 Cir. 1942), and a court must interpret that provision to determine whether it requires arbitration on certain items prior to granting such relief. The court must decide whether the parties had agreed to submit the particular disputes to arbitration. Neither the federal policy in favor of arbitration nor the ostensible broad reach of the arbitration provision in question relieves the District Court of judicial responsibility of determining the question of arbitrability, unless the arbitration provision is so unusually broad that it clearly vests the arbitrators with the power to resolve questions of arbitrability as well as the merits, see United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1963). The arbitration provision here is broad, but not that broad.
 
 
 5
 The Supreme Court has explicitly and unanimously reserved the question of arbitrability for the courts. 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties,' Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462 (1962). 'For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,' United Steelworkers v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 582, 80 S.Ct. at 1353. Accord, John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). This principle has been annunciated in actions to compel arbitration that were commenced under section 301 of the Labor Management Relations Act, 29 U.S.C. 185, but we can perceive no reason why this principle should not be equally applicable in proceedings to compel arbitration that are like the instant one, commenced under the Federal Arbitration Act, cf. Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133, 135 (2 Cir. 1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958). In fact this principle has been applied with little need for discussion in proceedings under the Federal Arbitration Act, see, e.g., Metro Industrial Painting Corp. v. Terminal Constr. Co., 287 F.2d 382, 385 (2 Cir.), cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961); Greenwich Marine, Inc. v. S.S. Alexandra, 225 F.Supp. 671, 676 (S.D.N.Y.1964), aff'd, 339 F.2d 901 (2 Cir. 1965); cf. also Reconstruction Fin. Corp. v. Harrisons & Crosfield, Ltd., 204 F.2d 366, 368, 37 A.L.R.2d 1117 (2 Cir.) (dictum), cert. denied, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953). The language of section 4 of the Act requires no less: the reluctant party can only be ordered 'to proceed to arbitration in accordance with the terms of the agreement.'
 
 
 6
 Hence, the District Court had the responsibility of determining whether each of the nine items listed in the Sales Corp.'s letter demanding arbitration was a matter, dispute or disagreement 'arising out of or in connection with' the 1961 agreement. The District Court failed to fulfill this duty and we thus have the alternative of making the determination for ourselves or remanding to the District Court. In respect to all the items, even on the meager record before us, the question of arbitrability seems so clear that no useful purpose would be served by leaving the question to be resolved by the District Court upon further proceedings, and in order to expedite this litigation, we will rule on the arbitrability of each of the items. Cf. Livingston v. John Wiley & Sons, Inc., 313 F.2d 52 (2 Cir.), aff'd, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).
 
 
 7
 Items 4 and 5 are arbitrable, for they directly relate to certain provisions[2] in the agreement and the order below insofar as it directs Necchi to proceed to arbitration on those items is affirmed. It seems equally clear that items 1, 2, 3, 6, 7 and 9 are not arbitrable, and the order below insofar as it directs Necchi to proceed to arbitration on those items is reversed. Notwithstanding 'the federal policy to construe liberally arbitration clauses,' Metro Industrial Painting Corp. v. Terminal Const. Co.,287 F.2d 382, 385, cert. denied, 368 U.S. 817, 82 S.Ct. 31, 7 L.Ed.2d 24 (1961), and the Federal Arbitration Act's 'liberal policy of promoting arbitration,' Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 410 (2 Cir. 1959), cert. granted 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, cert. dismissed pursuant to stipulation, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), there is no basis for maintaining that the matters referred to in items 1, 2, 3, 6, 7 and 9 arise out of or in connection with the agreement.
 
 
 8
 Item 1 seeks to have Necchi 'cease and desist' from engaging in certain practices claimed to constitute unfair trade practices and item 2 seeks 'damages' and 'accounting' for these practices. But there is no plausible claim that any of these practices contravened the agreement, or that Necchi's conduct in these affirs was governed by the agreement. The claim referred to in item 3 relates to services performed by the president of the Sales Corp. in attempting to settle a dispute between Necchi and another manufacturer involving a charge of patent infringement. This dispute has nothing to do with the 1961 exclusive distributorship agreement between Necchi and the Sales Corp. and the understanding upon which the president allegedly acted was entered into prior to that agreement. Item 6 also does not present an arbitrable dispute. Assuming that the equipment referred to in that item is not the 'parts and accessories' referred to in item 4, there is no provision in the 1961 agreement that directs the Sales Corp. to supply 'equipment * * * intended for inclusion in Necchi machines,' nor is there any provision that obliges Necchi 'to assume and pay' the Sales Corp. for such equipment. If the equipment in item 6 is the same as that of item 4, then the order directing arbitration on item 4 will suffice. The matter referred to in item 7 has been governed by a contract entered into by Necchi and the Sales Corp. in 1958, and that contract, one without an arbitration provision, has remained distinct and separate from the 1961 exclusive distributorship agreement containing the arbitration provision. Item 9 demands 'reimbursement * * * for the monies expended by us during the past 16 years advertising and promoting the name' Necchi. Although common law principles of restitution might well support this claim for reimbursement, an issue upon which we express no opinion, this claim is not founded on any provision of the 1961 agreement and hence the dispute is not arbitrable. It is undoubtedly true that many of the matters referred to in items 1, 2, 3, 6, 7 and 9 would not have arisen if the exclusive distributorship arrangement had never existed between the Sales Corp. and Necchi. But this is not sufficient to render them arbitrable within the specific meaning of the arbitration clause of the 1961 agreement, which requires that the matter arise out of or in connection with that argeement rather than the working relationship between the parties.
 
 
 9
 We also hold that, in light of the circumstances of this case and language of the 1961 agreement, item 8 is not arbitrable. This item charges Necchi with failing to negotiate in good faith an extension of the distributorship agreement. The 1961 agreement provides that six months before its expiration both parties 'shall examine the possibility of executing a new and, it is hoped, long term distributorship agreement for the same territory and at such terms and conditions as will be then discussed and defined.'[3] This paragraph, however, does not impose an obligation on Necchi to grant a renewal of the distributorship and it is impossible to say what relief would be appropriate if Necchi failed to examine the possibility of a renewal. Certainly, we cannot ask that a renewal contract be written for the parties, as it is altogether too conjectural that the parties would have agreed and on what terms. It is impossible to assess any damages, as there is no way that anyone could forsee what would have come from examining the possibility of executing a new contract, even if this were done in the utmost good faith. Absent, a clear definitive statement that the parties wish to litigate or arbitrate differences over the failure to engage in discussion relating to a renewal, and absent some indication as to how damages are to be fixed in case of a breach, the courts should hesitate before enforcing such a contract provision.
 
 
 10
 The order below is affirmed insofar as it dismisses without prejudice Necchi's parallel declaratory judgment action and directs Necchi to proceed to arbitration on items 4 and 5 and to appoint an arbitrator for those purposes; in all other respects the order is reversed.
 
 APPENDIX
 
 11
 Necchi Sewing Machine Sales Corp.
 
 164 West 25th Street
 
 12
 New York, 1, N.Y.
 
 May 22nd, 1964
 
 13
 Necchi S.p.A.
 
 
 14
 Pavia,
 
 
 15
 Italy.
 
 Gentlemen:
 
 16
 We are now repeating formally our demand for arbitration of our matters, disputes and disagreements against you, pursuant to the agreement between us dated July 18th, 1961, paragraph '(m)' thereof:
 
 1. To compel you to cease and desist from:
 
 17
 a. Soliciting, contacting or doing business with any of our distributors and dealers;
 
 
 18
 b. Unfair and tortious trade practices and unfair competition.
 
 
 19
 2. You are liable and responsible to us for all damages and losses suffered or incurred by us by reason of the foregoing and an accounting for such damages is being demanded herein.
 
 
 20
 3. Our claim for $25,000 against you for the negotiations and arrangements made with Brother International, as agreed.
 
 
 21
 4. You are to repurchase from us parts and accessories for a value up to $75,000.
 
 
 22
 5. You are to assume and take over all of our responsibilities under the Necchi warranty.
 
 
 23
 6. You are to assume and pay us for such Necchi 'equipment' supplied by us to and in your possession and control and for such equipment in our possession, intended for inclusion in Necchi machines.
 
 
 24
 7. You are to assume our licenses and obligations under agreements between Julius Hochman and us, pay us all monies due from you to us related to the Julius Hochman inventions, and reimburse us for all monies and property expended by us in connection with the development, improvement and promotion of the Julius Hochman inventions.
 
 
 25
 8. Your failure to negotiate in good faith with us for an extension of the distributorship agreement between us and an accounting by you for all damages suffered or occasioned by us thereby.
 
 
 26
 9. Reimbursement to us to the extent of your responsibility to us for monies expended by us during the past 16 years advertising and promoting the name 'Necchi.'
 
 
 27
 As you were heretofore notified in our letter to you dated March 2nd, 1964, we appointed A. P. Bersohn, Esq. of 551 Fifth Ave., New York, N.Y. as our arbitrator. In the same letter we called upon you to appoint an arbitrator so that the two arbitrators could then proceed as provided in the above referred to agreement as expeditiously as possible. You chose to disregard our notice and demand, and we are now advising you that unless you appoint your arbitrator forthwith and advise us his name within ten (10) days from date of this letter, we shall be constrained to proceed without any further delay.
 
 
 28
 Very truly yours, Necchi Sewing Machine Sales Corp. Leon Jolson, President. B. M. Krisiloff, Secretary.
 
 LJ/ss
 
 29
 Registered Mail-- R.R.R.
 
 
 30
 cc Necchi S.p.A., Suite 1302, 375 Park Ave., New York, N.Y.
 
 
 31
 cc Fink & Pavia, Esq., 63 Wall St., New York, N.Y.
 
 
 
 [1]
 There can be no doubt that the obligation to arbitrate survives the termination date of the exclusive distributorship agreement in the sense that arbitration can be compelled after that date, provided, of course, that the matter, dispute or disagreement 'arises out of or in connection with the agreement.' See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [2]
 '3(j) * * * With regard to accessories and spare parts of Necchi production stock by Necchisew (The Sales Corp.) on December 31, 1962 (later amended to '1963'), Necchi S.p.A. undertakes to repurchase a portion thereof for a value of up to seventy-five thousand dollars ($75,000) calculated at the original invoice prices, provided the same is found in perfect condition.'
 '3(l) Unless the distributorship is terminated before December 31, 1962 (later amended to '1963'), by reason of Necchisew's default, Necchi S.p.A. of Pavia shall undertake upon termination of this distributorship agreement all servicing of Necchi sewing machines sold by Necchisew, in conformity with the standard form of 'guaranty' in use, provided, however, that in the event Necchi S.p.A. should withdraw from the American market, then the servicing obligations under the standard form of 'guaranty' will be carried out by Necchisew to whom Necchi S.p.A. shall supply such spare parts as may be needed.'
 
 
 [3]
 '3(i) Six (6) months before the expiration of this agreement, that is, before June 30, 1962, Necchisew and Necchi S.p.A. of Pavia, shall examine the possibility of executing a new and, it is hoped, long term distributorship agreement for the same territory and at such terms and conditions as will be then discussed and defined. In the event such an agreement is not reached, the present agreement will be terminated on December 31, 1962, without need of any advance notice and without any right accruing to either party to make any claim whatsoever for damages or otherwise, by reason of such termination.'