Brian G. KNIGHT,

v.

DOCU–FAX, INC., Business Communications Industries, Inc., d/b/a Business Communications, Inc./Datafax, and d/b/a Datafax/BCI, Gary D. Hill, a/k/a Gary Hill, Greg Hill, Herb Baker, and P.L. Baker, a/k/a Pamela L. Baker, jointly and severally.

No. 1:92–CV–2603–RCF.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 7, 1993.

Scott McKenzie Stevens, Office of Scott M. Stevens, Atlanta, GA, for plaintiff.

Richard E. Reiter, Jr., Office of Richard E. Reiter, Jr., Larry James Eaton, Office of Larry James Eaton, Fayetteville, GA, for defendant.

Charles W. Field, Office of Charles W. Field, Atlanta, GA, for defendant.

## ORDER

RICHARD C. FREEMAN, Senior District Judge.

This action is before the court on the court's Order of August 13, 1993 [# 68–1] [August Order]. In the August Order, the court granted defendants Docu–Fax, Inc. [Docu–Fax], Business Communications, Inc. [BCI], and Gary Hill [collectively "business defendants"]' motion to compel arbitration, and directed the parties, including defendants Herb and P.L. Baker [the Bakers], to file briefs regarding whether the court should retain jurisdiction over this case pending arbitration, or simply dismiss the action. The court also instructed the parties to specifically state whether plaintiff's claim that defendants breached a separate agreement to settle the parties' disputes [Settlement Agreement] [1] merits special treatment. *See* August Order, at 8.

1. *See* Exhibit A to Plaintiff's Brief in Support of   Retaining Jurisdiction ("Agreement for Settle-

The court has received the requested briefs, and finds them to be of little assistance. As explained more fully below, it now appears that before the court can decide whether to retain jurisdiction pending arbitration, the court must examine the threshold issue of the legal effect of the Settlement Agreement and whether it has been breached. However, before the court unties this Gordian Knot, the setting for this case must be described.

*Background*

## A. The Relevant Facts

Essentially, this case involves two separate contracts and two separate alleged sources of injury. Plaintiff's complaint contends that on or about January 12, 1989, plaintiff contracted with defendant Docu–Fax, via a document labelled "Manufacturer Sales Agreement," to purchase ten self-service, credit-card operated public facsimile (fax) machines and telephones for the price of $69,950. Plaintiff alleges that he paid Docu–Fax $71,350, the purchase price and a fee required by the contract for finding locations for plaintiff to install his equipment. Complaint, ¶¶ 14–17.

Plaintiff claims that defendants[2] defrauded him by executing the Manufacturer Sales Agreement with no intention of ever fulfilling their end of the bargain. Complaint ¶¶ 20–22. Plaintiff further alleges that, although Docu–Fax did deliver the machines, Docu–Fax breached the Manufacturer Sales Agreement by failing to comply with the agreement's express and implied warranties, by delivering non-conforming goods, by failing to disburse collected funds to plaintiff as required by the contract, and by failing to find suitable locations for the purchased machines. Complaint, ¶¶ 25–32.

Less than a year from the date of the original contract, the parties' relationship soured. Expecting to resolve their differences, the parties entered into the aforementioned Settlement Agreement on or about September 7, 1989. The Settlement Agreement, as modified by an Addendum and two separate Amendments, provided for a payment of $65,000 to plaintiff, to be paid in installments as specified in the Addendum and Amendments to the Settlement Agreement. Complaint, ¶¶ 33–39. In exchange for this sum, plaintiff was to return the purchased machines to Docu–Fax. Settlement Agreement, ¶¶ 6–7. As discussed in further detail, *infra* p. 1582, 1584–1585, the Settlement Agreement also provided that the parties would release each other from all claims, whether known or unknown, they had or might acquire against each other.

Plaintiff claims that defendants have paid only $22,000 of the agreed "refund" to him. Thus, plaintiff maintains that defendants are in breach of the Settlement Agreement, as amended. Complaint ¶¶ 40–42.[3] The business defendants admit that "there may have been a breach" of the Settlement Agreement. Business Defendants' Answer and Counterclaim ¶ 42.

■ This action was filed on November 4, 1992. The tangled web that the parties have woven in prosecuting this case constitutes one of the most confusing, clouded, and convoluted cases this court has ever seen. Specifically, plaintiff resists arbitration of disputes arising under the Manufacturer Sales Agreement, even though he *knows* full well that arbitration is required under the Manufacturer Sales Agreement.[4] Plaintiff also ar-

---

ment, Confidentiality and Mutual Release of All Claims").

2. Plaintiff alleges that defendant Gary Hill is the President of Docu–Fax and the CEO/Secretary/Treasurer of BCI. Plaintiff also alleges that defendant P.L. Baker is the Secretary/Treasurer of Docu–Fax, and that defendants Greg Hill and Herb Baker are agents and employees of Docu–Fax. Plaintiff alleges that all of these defendants are the alter-egos of Docu–Fax, and are therefore jointly and severally liable. Complaint, ¶¶ 46–55.

3. In addition to these claims, plaintiff also alleges (1) violations of the Racketeer Influenced and

Corrupt Organizations Act [RICO], 18 U.S.C. § 1962, (2) violations of the Georgia RICO Act, O.C.G.A. §§ 16–14–1 *et seq.*, and (3) violations of the Georgia Sale of Business Opportunities Act, O.C.G.A. §§ 10–1–401 *et seq.* Complaint, counts six through eight. Plaintiff also seeks expenses of litigation. Complaint, count nine.

4. *See* Plaintiff's Request for Admissions (propounded to Docu–Fax), Exhibit H at 3 (Plaintiff's May 31, 1989, letter to Gary Hill complaining of injuries and stating "[p]lease do not threaten me, again, that you will drag this through the courts for years; I know that the American Arbitration

gues that the Settlement Agreement is not supported by consideration,[5] but inconsistently seeks to enforce the Settlement Agreement by claiming a breach. Similarly maddening is business defendants' request for arbitration of plaintiff's claims while simultaneously arguing that all claims but those pertaining to the breach of the Settlement Agreement are barred by the Settlement Agreement. Business defendants also ask for a stay pursuant to the automatic stay provisions of the bankruptcy code, but have continued to pursue the action rather than the stay. All parties have violated the Local Rules of this court in one way or another. Most egregious is each party's failure in almost every instance to provide citation to binding authority in support of their motions. *See* LR 220–1(a)(1), NDGa. ("Every motion presented to the clerk for filing shall be accompanied by a memorandum of law citing supporting authorities and, when allegations of fact are relied upon, by supporting affidavits."). Finally, the parties have exhibited a complete lack of regard for the Federal Rules of Civil Procedure, which contemplate that discovery be conducted with a minimum of judicial intervention. Instead, the parties have burdened this court with no less than fourteen discovery disputes. In short, this case has generated a mountain of paper (81 submissions and Orders to date) that is ultimately unhelpful to the court. Rather than providing a roadmap pointing the way to resolution, this mountain of paper more resembles a spinning weathervane.

The court charges the parties' counsel with the responsibility for this quagmire. Not unlike quicksand in the jungle, the perils of this case were not obvious to the court until it came time to make the deceptively simple determination of whether to dismiss the action or stay it pending arbitration. Because of the aforementioned tactics and transgressions of the parties, through their counsel,

the court has had to unnecessarily spend a great deal of its time, and certainly all of its patience, in trying to reach the proper result. The court places the parties and their counsel on notice that, in the future, the court expects cooperation, adherence to both the letter and spirit of the Local Rules and the Federal Rules of Civil Procedure, researched presentation of legal arguments, and an end to the masking of the true issues in the case via pursuit of conflicting theories. Failure to comply with this Order shall result in an appropriate sanction.

## B. The Contractual Provisions Underlying the Issues

As the court noted in its August Order, the original agreement in this dispute—the Manufacturer Sales Agreement—specifies:

> Purchaser [plaintiff] and corporation [Docu–Fax] agree that this Agreement shall be deemed to be made under, and shall be construed in accordance with and governed by the laws of the State of Georgia and that any dispute arising under this Agreement shall be resolved through arbitration to be held in Atlanta, Georgia, and in accordance with the arbitration rules of the American Arbitration Association.

Manufacturer Sales Agreement, ¶ 11.[6] On the basis of this provision, the court ordered the parties to arbitrate their disputes. *See* August Order, at 7–8. This Order would have ended the matter, but for the presence of the parties' Settlement Agreement.

The fly in the arbitral ointment, the "Mutual Release" section of the Settlement Agreement, recites:

> Excepting causes of action to enforce the [Settlement Agreement], for the consideration of entering into this release and Settlement Agreement, all such PARTIES[7] hereby release and forever discharge each other, as against each other, their spouses,

---

Association moves much faster than the court system. [The Manufacturer Sales Agreement] states that disputes shall be resolved by the American Arbitration Association.").

**5.** The court will not waste time and paper addressing this nearly frivolous argument. It is hornbook law that mutual releases, such as the

type at issue here, by definition constitute consideration.

**6.** Attachment to Business Defendants' Motion to Compel Binding Arbitration.

**7.** Plaintiff and Docu–Fax, through its president, Gary Hill, signed the Settlement Agreement.

agents, predecessors, successors, and shareholders from all liabilities, claims and causes of action, whether now known or whether unknown, their shareholders, agents, employees, partners, limited or otherwise, affiliates, directors, predecessors, successors and/or assigns may now have or may hereafter have or claim to have by reason of any matter or thing arising from any cause whatsoever prior to the date of this Release and Agreement, and without limiting the generality of the foregoing from all claims, demands and causes of action they may now have or may hereafter have or claim to have against any of such PARTIES in connection with any matter related to any claim of any such PARTIES.

... [A]ll the PARTIES named herein expressly acknowledge that, pursuant to the terms and provisions of this release, they intend by this release to include in its effect, without limitation, all claims which they do not know or suspect to exist in their favor against each other, and that this release contemplates an extinguishment of such claim or claims.

. . . .

THE PARTIES herein [agree] ... that they will not hereafter sue any of the other PARTIES named herein or bring any proceeding against any such PARTY name herein before any court on the matter released herein, *so long as the terms of this agreement are followed.*

8. To the partial credit of the parties, the issue of the existence of the Settlement Agreement and its purported effect upon the Manufacturer Sales Agreement has been *raised* both in the requested briefs and in previous submissions. However, the arguments by the parties regarding the issue are confused, conflicting, incomplete, or simply unsupported by authority. For example, plaintiff argues that (1) the action should be stayed rather than dismissed because some defendants may not be bound by the arbitration clause, (2) some issues are not arbitrable, and (3) because the Settlement Agreement supersedes the original agreement and contains no arbitration provision, any dispute under the Settlement Agreement is not arbitrable. Plaintiff additionally argues that, because the Settlement Agreement has been breached by defendants, he cannot be deemed to have waived any of his claims through the Settlement Agreement. Plaintiff therefore contends that he is "in no way limited to proceeding solely

Settlement Agreement, at 3–4 (emphasis added).

It was this above-quoted provision, and the Settlement Agreement in general, upon which the court in the August Order requested further briefing. To the court's great dismay, the submissions pursuant to the August Order serve only to confuse what is already a morass of epic proportions.[8]

*Discussion*

## A. Arbitrability of Disputes Under the Settlement Agreement

As the court previously stated, the threshold question upon which all else depends is the effect of the Settlement Agreement upon the Manufacturer Sales Agreement. Before the Settlement Agreement's effect can be properly considered, however, the court will determine whether the Settlement Agreement claims themselves should be arbitrated. For several reasons, the court finds that this court, rather than arbitrators, must hear these claims.

■ First, in order to determine the arbitrability of *any* of the alleged disputes, as is this court's duty, *Wheat, First Sec., Inc. v. Green,* 993 F.2d 814, 819 (11th Cir.1993), the court must determine whether any claims exist to be arbitrated. Determining whether any claims exist to be arbitrated necessitates determining the effect of the Settlement Agreement upon the Manufacturer Sales Agreement, which, as discussed *infra* pp.

under the breach of the settlement agreement claim."

Plaintiff's arguments attempt to further fragment an already confused inquiry. On one hand, he argues for the purpose of avoiding arbitration that the Settlement Agreement supersedes and extinguishes the Manufacturer Sales Agreement. On the other hand, plaintiff desires to breathe life into the Manufacturer Sales Agreement—elsewhere pronounced deceased—for the purpose of asserting claims under that contract. Furthermore, plaintiff simultaneously insists that although the Settlement Agreement supersedes the Manufacturer Sales Agreement, the Settlement Agreement was not supported by consideration and that its release provisions are ineffective because Docu–Fax breached its provisions. Plaintiff cannot have it both ways. Either the Settlement Agreement is effective, or it is not. Indeed, that is the current inquiry of this court.

1585 necessitates the determination of the existence or non-existence of a breach of the Settlement Agreement. Thus, the existence *vel non* of a breach is therefore inextricably intertwined with the general question of arbitrability, and must be determined only by this court.

■ Second, the court cannot find that the only arbitration provision in this case, i.e., the arbitration provision in the Manufacturer Sales Agreement, controls disputes stemming from the Settlement Agreement. Such a finding would require the court to hold that disputes under the Settlement Agreement "arise under" the Manufacturer Sales Agreement within the meaning of that latter document. *See* Manufacturer Sales Agreement, ¶ 11 ("[A]ny dispute arising under this Agreement shall be resolved through arbitration."). The court cannot accept this view. If the parties had desired all subsequent dealings between the parties (including matters relating to the Settlement Agreement) to be subject to arbitration, they could have so provided. The parties did not so provide. Instead, they agreed that all disputes "arising under" the Manufacturer Sales Agreement would go to arbitration.

Courts generally construe broadly arbitration provisions employing the term "arising under or relating to this agreement" to define the arbitrable matters. *See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398, 87 S.Ct. 1801, 1803, 18 L.Ed.2d 1270 (1967) ("arising out of or relating to" considered a "broad arbitration clause"). However, some courts, including the Eleventh Circuit, consider the term "arising under" to be less broad than the term "arising under *or relating to.*" *See, e.g., S.A. Mineracao Da Trinadade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir.1984) (drawing distinction between arbitration clauses referring to disputes "arising under" and disputes "arising under or relating to," in order to limit the sweep of the former); *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir.1983) ("We have no difficulty finding that 'arising hereunder' is intended to cover a much narrower scope of disputes," than "relating to").

The Eleventh Circuit has adopted this limiting construction of arbitration clauses employing only "arising under" language. *See Seaboard Coast Line RR Co. v. Trailer Train Co.*, 690 F.2d 1343, 1350–51 (11th Cir. 1982). In *Seaboard Coast*, the court approved a decision by the Second Circuit, *Necchi, S.p.A. v. Necchi Sewing Machines Sales Corp.*, 348 F.2d 693 (2d Cir.1965), *cert. denied*, 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966) which held that matters arising out of separate and distinct contracts did not "arise under" a prior agreement containing an arbitration provision. *See Seaboard Coast*, 690 F.2d at 1351 (approving *Necchi* ). Significantly, the Eleventh Circuit panel quoted approvingly a passage from *Necchi* in which the Second Circuit stated "[t]he matter [in dispute] has been governed by a contract entered into by Necchi and the Sales Corp., and that contract, one without an arbitration provision, has remained distinct and separate from the ... [agreement with the arbitration clause]." *Necchi*, 348 F.2d at 696–97. In finding that the contracts at issue in *Seaboard Coast* were distinct and separate, the Eleventh Circuit rejected the argument that "but for the first contract" there would have been no ultimate dispute, and instead relied upon the limited language in the arbitration provision. *See Seaboard Coast*, 690 F.2d at 1351.[9]

9. Similarly, in this case, though it is true that "but for" the original agreement the Settlement Agreement would not exist, as a practical matter it is also true that the Manufacturer Sales Agreement never contemplated the possible existence of the Settlement Agreement (because it anticipated arbitration instead), and certainly never contemplated a breach of the unforeseen Settlement Agreement. *Cf. David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 252 (2d Cir.1991) ("but for the original contract, the subsequent agreements 'had no starting point, no finishing point, and no subject matter,' " and thus "arose under" the original contracts), *cert. dismissed*, — U.S. —, 112 S.Ct. 17, 115 L.Ed.2d 1094 (1991). Thus, while the parties here clearly provided the means of resolution for disputes under the Manufacturer Sales Agreement (i.e., arbitration), they did not simultaneously provide for disputes arising under a separate agreement purporting to extinguish the contemplated disputes under the Manufacturer Sales Agreement.

Based upon the reasoning outlined above, the court concludes that the arbitration provision in the original contract, the Manufacturer Sales Agreement, is simply not so expansive as to include matters merely relating to, as opposed to arising under, the original contract. The court further concludes that the two contracts at issue in this case are distinct and separate.

The Settlement Agreement was clearly intended to place the parties on new, mutually agreeable terms governed by a new, separate charter that superseded the old. *See Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir.1983) ("If, however, the contract had been terminated by a separate, collateral agreement, the dispute over the termination would not be arbitrable because it could not reasonably be classified as an issue arising 'under' the original contract."). Furthermore, the presence and extent of injury under the Settlement Agreement can be determined without reference to the Manufacturer Sales Agreement at all. Putting aside the similarity of the subject matter of the two contracts at issue, determining the breach *vel non* of the Settlement Agreement requires the factfinder to construe *only* the Settlement Agreement and the performance (or lack thereof) under that contract.

In sum, the court finds that any disputes arising under the Settlement Agreement are not arbitrable because claims under that contract do not "arise under" the Manufacturer Sales Agreement. Therefore, all matters relating to the Settlement Agreement are properly before the court.

## B. The Effect of the Settlement Agreement Upon the Claims Arising Under the Manufacturer Sales Agreement.

If the Settlement Agreement extinguishes the Manufacturer Sales Agreement, it extinguishes the arbitration provision therein as well. *See General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924, 929 (5th Cir.1970) ("If the first agreement was superseded by the second, arbitration would drop out of the picture....").[10] The next question before the court then, is whether the Settlement Agreement did just that.

Whether the Settlement Agreement nullifies the Manufacturer Sales Agreement depends upon the terms of Settlement Agreement and the intentions of the parties.[11] Despite the inartful drafting, the court finds the clear intent of the parties to be the "implement[ation of] a full and complete General Release and discharge of all claims against each other." Settlement Agreement, at 3. Therefore, the court will give effect to the express language reciting that "this release contemplates an extinguishment of [all present and future] claims." [12] *Id.*

10. All decisions of the former Fifth Circuit decided prior to October 1, 1981 are binding precedent for the Eleventh Circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

11. The language of the "Mutual Release" provision of the Settlement Agreement, *supra* p. 1582, serves as a textbook case of poor contractual drafting. The Settlement Agreement's principal paragraph beginning "Excepting causes of action to enforce the [Settlement Agreement]," purports to "release and forever discharge each other, as against each other [and as against related parties], from all ... causes of action, whether now known or whether unknown, their shareholders, agents, employees, partners, limited or otherwise, affiliates, directors, predecessors, successors and/or assigns may now have or may hereafter have or claim to have." Settlement Agreement, at 3. Strictly construed, the plain language of the contract relieves each party from any cause of action that *any other non-party* (i.e., "shareholder, agents, employees, partners," etc.)

"may have." *Id.* The provision does not, by its language, relieve each party from any claim *each party* may have against each other. In short, the Settlement Agreement literally releases each party from third-party actions against the other.

Of course, the court will not construe a contract to achieve absurd results or to frustrate the intentions of the parties. *See* O.C.G.A. § 13-2-3 ("The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction."); *see also Brown v. Chrysler Corp.*, 112 Ga.App. 22, 143 S.E.2d 575, 576 (Ga.App.1965) ("A contract must be given a reasonable construction which will uphold and enforce the instrument, if possible, rather than a construction which would ... lead to an absurd result.").

12. The parties also expressed this intention elsewhere in the document: "Each party shall exe-

■ As previously noted, the Settlement Agreement contained no arbitration provision. Thus, in view of the expressed intentions of the parties, the court can order arbitration of the claims under the Manufacturer Sales Agreement only if it determines that the Settlement Agreement has *no* preclusive effect as to any claims made under the Manufacturer Sales Agreement. The court finds that the parties have contemplated just such an occurrence, as they agreed in the Settlement Agreement that "[the parties] will not hereafter sue any of the other PARTIES named [in the Settlement Agreement] or bring any proceeding against any such PARTY named [in the Settlement Agreement] before any court on the matter released herein, *so long as the terms of this agreement are followed.*" *Id.* at 3–4 (emphasis added). By this language, then, the court finds that the parties intended the Manufacturer Sales Agreement and the claims thereunder to survive *if and only if* a party breached the Settlement Agreement. Otherwise, all claims that exist or may have existed under the Manufacturer Sales Agreement disappear by virtue of the Settlement Agreement. Indeed, the court can find no construction of the just-quoted language to the contrary.

Therefore, the effectiveness of the Settlement Agreement as an "extinguisher" of claims under the Manufacturer Sales Agreement (and, *a fortiori*, the obligation to arbitrate such), depends upon the occurrence or non-occurrence of a breach of the Settlement Agreement. Plaintiff has alleged just such a breach. *See* Complaint, Count Three. As previously noted, business defendants bafflingly fail to confirm or deny a default on their part, and instead "admit that there *may have been* a breach." Answer ¶ 42 (emphasis added).

Further proceedings in this action therefore hinge directly upon proof of a breach of the Settlement Agreement. Proof that no breach occurred would end the action completely, because any claims made under the Manufacturer Sales Agreement are barred by the Settlement Agreement's release provisions, and failure to prove a breach *ipso facto* negates any claim(s) regarding the Settlement Agreement itself. On the other hand, proof that a breach did in fact occur would revive the previously extinguished claims arising under the Manufacturer Sales Agreement. Proof of a breach would also revive the arbitration provision in the Manufacturer Sales Agreement, obligating the court to compel arbitration of the revived claims.

In view of the foregoing, this court must vacate as premature its decision of August 13, 1993, to compel arbitration. The court will re-issue that directive if and when a breach of the Settlement Agreement is proven.[13] The court recognizes that this ruling revives all the motions denied as moot in the August Order, and adds these to the seventeen other outstanding motions either filed after the August Order or not discussed in the August Order. Today's Order is an attempt to begin spinning a silk purse out of

---

cute a Mutual Release of all claims, incorporated in this agreement, which shall extinguish now and forever any claims arising from the entire transactions of the parties, which have arisen prior to the date of the execution of this agreement." Settlement Agreement, ¶ 13.

13. The court recognizes that plaintiff has moved the court for reconsideration of its August Order, asserting that certain claims under the Manufacturer Sales Agreement are not arbitrable, presumably even in the presence of a breach of the Settlement Agreement. Even though the court today vacates its August Order, it stands by the reasoning in its August Order and will compel arbitration of the non-Settlement Agreement claims once—if ever—a breach of that agreement is proven. The August Order is vacated on grounds of prematurity, not incorrectness. To the extent that plaintiff's arguments in his motion for reconsideration must be addressed, the court will do so only when, if ever, the court re-compels arbitration. The court will not waste time in this already lengthy Order to address arbitration issues that do not ripen until a breach of the Settlement Agreement is proven.

Finally, the court directs the attention of plaintiff's counsel to LR 220–6, NDGa., regarding motions for reconsideration. "Whenever a party or attorney for a party believes it is absolutely necessary to file a motion to reconsider an order or judgment, the motion shall be filed with the Clerk of the Court within 10 days after entry of the order or judgment." *Id.* The absolute necessity of the motion is a matter of professional judgment, but by any standard, plaintiff's motion arrived at this court nearly a month delinquent. Failure to follow simple rules such as this has contributed to the colossal confusion in this case.

the sow's ear this case has become. Allowing nearly thirty motions to gather dust while the court awaits evidence and motions regarding whether either party has breached the Settlement Agreement claim would hardly be efficient. Therefore, the court acts upon these motions in a separate Order filed contemporaneously with this Order.

*Conclusion*

Accordingly, the court's Order of August 13, 1993 [# 68–1], compelling arbitration is hereby VACATED. All motions disposed by the August Order are hereby REVIVED.

SO ORDERED.