Hugh COLLINS, et al., Plaintiffs,

v.

INTERNATIONAL DAIRY QUEEN,
et al., Defendants.

No. 5:94–95–4–MAC(WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Jan. 21, 1998.

William Camp Harris, John Elvis James, Lisa Neill–Beckmann, Macon, GA, Diane Green Smith, Chicago, IL, Lee Abrams, Chicago, IL, for Hugh Collins, Max Collins, Matt Mullis, Dairy Queen of Powder Springs, Inc., T–Jazier, Inc., Dairy Queen and Brazier of Eastman, Inc.

Emmet J. Bondurant, II, Atlanta, GA, Benjamin M. Garland, F. Kennedy Hall, Macon, GA, William L. Killion, Quentin R. Wittrock, Minneapolis, MN, for International Dairy Queen, Inc., American Dairy Queen Corporation.

## ORDER

OWENS, District Judge.

Defendants have moved for a stay of these proceedings as to all members of Class III, consisting of all members of the permanent settlement class in the *Poole* Settlement Agreement,[1] and all persons claiming under them, who may have claims against defendants arising from that agreement.

On January 8, 1997, the court ruled that members of the *Poole* settlement class were entitled to receive notification of this class action whether or not their franchise agreements contain arbitration clauses. *See Collins v. International Dairy Queen, Inc.*, 169 F.R.D. 690 (M.D.Ga.1997). That opinion stated that in this court's judgment the claims of the *Poole* class members arise exclusively from the settlement agreement entered by the Tennessee court and relate to the settlement agreement rather than to the underlying franchise agreement. The *Poole* settlement agreement specifically provided:

> Defendant American Dairy Queen Corporation is willing to abide by the settlement agreement, for the benefit of members of the Temporary Settlement Class, in order to establish for the benefit of such members certain advantages, exclusively set forth in Attachment A, in addition to their present contractual relationships with said defendant.

In reaching this conclusion the court concurred with the analysis in *Knight v. Docu-Fax, Inc.*, 838 F.Supp. 1579 (N.D.Ga.1993), that an arbitration clause in a manufacturer sales agreement was not sufficiently broad to encompass disputes relating to a later settlement agreement. As was true in that case, the *Poole* litigation and resulting settlement would not have occurred were it not for the existence of the underlying franchise agreements. Nevertheless, "as a practical matter it is also true that the [franchise agreements] never contemplated the possible existence of the Settlement Agreement (because [they] anticipated arbitration instead), and certainly never contemplated a breach of the unforeseen Settlement Agreement." *Knight*, 838 F.Supp. at 1583 n. 9.

This court's previous ruling was made without prejudice to the right of defendants to move for stays pending arbitration after notice had been sent to potential class members. Notice having now been provided to class members, defendants renew their motion for arbitration with respect to those post-*Poole* franchise agreements which contain arbitration clauses, which the court's previous ruling did not specifically address. The post-*Poole* franchise agreements require arbitration of all disputes between the parties "arising under, out of, in connection with, or in relation to" the franchise agreements and further generally provide:

> This Agreement and the application form executed by Licensee ... constitute the sole agreement between the parties with respect to the entire subject matter of this Agreement and embody all prior agreements and negotiations with respect to the "Dairy Queen" business.

Federal policy strongly favors arbitration and requires resolution of any doubt about the application of an arbitration clause in favor of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479–80, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Me-*

---

1. A class action settlement agreement was entered March 13, 1974, in the case of *Poole v. International Dairy Queen and American Dairy Queen*, Civil Action No. 6719, United States District Court for the Middle District of Tennessee, Nashville Division.

*morial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Gregory v. Electro–Mechanical Corp.,* 83 F.3d 382, 385 (11th Cir.1996). However, "it is still the rule that parties may not be compelled to submit a commercial dispute to arbitration unless they have contracted to do so." *Threlkeld & Co. v. Metallgesellschaft Limited,* 923 F.2d 245, 247 (2d Cir.1991), citing *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 696 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct. 892, 15 L.Ed.2d 664 (1966).

▆ In deciding whether to stay proceedings or compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.,* with respect to the post-*Poole* franchise agreements, we must determine: (1) whether there is a valid written agreement to arbitrate; (2) whether the issue is arbitrable under the agreement; and (3) whether the party asserting the claims has failed or refused to arbitrate the claims. 9 U.S.C. §§ 2–4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 400, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Defendants are correct that the post-*Poole* franchise agreements which are the subject of this motion contain a valid written agreement to arbitrate and that plaintiffs have failed or refused to arbitrate the claims. Thus, the only question is whether the claims arising out of the *Poole* settlement agreement fall within the scope of the arbitration provisions.

Defendants argue that where the arbitration provisions post-dated the settlement agreement the parties reasonably contemplated that any disputes "arising under or in connection with" their franchise agreements would be resolved by arbitration. Plaintiffs contend that the settlement agreement is an independent agreement containing additional terms and imposing additional obligations on defendants not covered by any franchise agreement. As they did with respect to the pre-*Poole* franchise agreements, plaintiffs rely on *Necchi S.p.A. v. Necchi Sewing Machine Sales Corp.,* 348 F.2d 693, 696 (2d Cir.1965), *cert. denied,* 383 U.S. 909, 86 S.Ct.

892, 15 L.Ed.2d 664 (1966). In *Necchi,* Necchi Sewing Sales Corporation was the exclusive American distributor of sewing machines manufactured by Necchi. A 1961 agreement relating to this relationship provided for arbitration of "all matters, disputes or disagreements arising out of or in connection with" the agreement. When Necchi refused to renew the exclusive distributorship in 1963, Necchi Sales Corp. demanded arbitration of nine claims.

The Second Circuit reversed in part the district court's order directing Necchi to proceed to arbitration, ruling that six of the claims were not arbitrable because they were not governed by the 1961 agreement or were not founded on any provision of the agreement. *Id.* at 698. The court explained that:

> It is undoubtedly true that many of the matters referred to in items 1, 2, 3, 6, 7 and 9 would not have arisen if the exclusive distributorship arrangement had never existed between the Sales Corp. and Necchi. But this is not sufficient to render them arbitrable within the specific meaning of the arbitration clause of the 1961 agreement, which requires that the matter arise out of or in connection with that agreement rather than the working relationship between the parties.

*Id.* at 698. The court found that claim 8 was not arbitrable for a different reason, while claims 4 and 5 were arbitrable since they directly pertained to certain provisions in the agreement. *Id.* at 697–98.

Defendants argue that subsequent opinions of the Second Circuit and prevailing authority in other circuits reflect a departure from *Necchi.* In *Threlkeld & Co., Inc. v. Metallgesellschaft Limited,* 923 F.2d 245, 247 (2d Cir.1991), Threlkeld and Metallgesellschaft ("MG")—a London-based corporation which was a member of the London Metal Exchange—entered into an informal agreement in 1986 for MG to purchase and sell forward contracts for metals on the London Metal Exchange ("LME"). *Id.* at 246–47. Several months later the parties reduced their agreement to writing in a preliminary

agreement containing an arbitration provision. *Id.* at 247. The writing contemplated a more formalized agreement in the future; however, no formalized agreement was ever entered into. During their relationship MG traded numerous forward contracts on behalf of Threlkeld. Threlkeld confirmed many of the trades in writings which specifically provided that the contracts were "subject to the current rules and regulations of the LME." *Id.* Another document executed in 1988 entitled "Terms of Business" also made the rules and regulations of the LME applicable to the business relationship of Threlkeld and MG. The LME Rules contained two arbitration provisions. *Id.* Threlkeld ultimately filed suit against MG for negligent misevaluation of Threlkeld's copper and aluminum forward positions. *Id.* at 246.

The Second Circuit rejected Threlkeld's argument that its damages stemmed not from the forward contracts but from a separate and distinct collateral agreement reached between the parties in 1989, by which MG agreed to provide Threlkeld with accurate ledger balances, forward contract valuations, and margin requirements. *Id.* at 247. Noting that the federal policy favoring arbitration was even more compelling in the context of international business transactions, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 629–31, 105 S.Ct. 3346, 3355–56, 87 L.Ed.2d 444 (1985), the court held that by incorporating the LME Rules including arbitration into their contracts, the parties had agreed to abide by the Rules. *Threlkeld,* 923 F.2d at 251. The court stated:

> The forward contracts were the genesis of the parties' relationship; the alleged collateral agreement stemmed directly from the forward contracts. The metals contracts between Threlkeld and MG represent the subject matter of the alleged valuation agreements; absent the forward contracts, the valuation agreement "had no starting point, no finishing point, and no subject matter."

*Id.* at 251–52, quoting *Pervel Industries, Inc. v. TM Wallcovering, Inc.,* 871 F.2d 7, 9 (2d

Cir.1989). The court concluded that "[p]lainly, an agreement that requires arbitration of 'all disputes arising out of or in relation to' a contract is broad enough to cover the disputes asserted in this case." *Id.* at 251.

In *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.,* 863 F.2d 315 (4th Cir.1988), Ryan was the assignee of exclusive distribution contracts with Rhone's affiliates which contained the following clause: "All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the Rules." *Id.* at 318. The distribution contracts were implemented by separate purchase orders. *Id.* at 317. Ryan and Rhone's affiliates also entered into security agreements covering Ryan's inventory and accounts receivable. *Id.* The Fourth Circuit upheld the finding of the district court that most of the claims were subject to arbitration even though neither the purchase orders nor the security agreements contained arbitration clauses, finding that the purchase orders and security agreements merely implemented the distribution agreements: "Without the ancillary agreements pertaining to the details of actual importation of the affiliates' products, the exclusive distribution agreements would be largely illusory." *Id.* at 319. The court reversed the district court's finding that a conspiracy claim between Rhone and its affiliates was not subject to arbitration, holding that the provision providing for arbitration of "[a]ll disputes arising in connection with the present contract did not limit arbitration to the literal interpretation of the contract. Instead, it embraced every dispute between the parties which had a significant relationship to the contract." *Id.* at 321.

Although the disputes in both *Ryan* and *Threlkeld* concerned themselves with international business relationships, the holding of the cases is not limited to cases with international aspects. On the other hand, the holding of *Necchi* that a dispute is not arbitrable unless it is sufficiently connected to the agreement to arbitrate still retains its validi-

ty. Accordingly, this court hereby reaffirms its holding in the January 8 order that those members of Class III who operate under franchise agreements predating *Poole* need not arbitrate their claims against defendants because they could not have contemplated the future existence of the settlement agreement. and thus did not intend that the additional rights conferred by said settlement agreement be encompassed by the arbitration clause.

■ The franchisees with franchise agreements post-dating *Poole* are in a different posture, however. They either were aware that the settlement agreement gave them additional rights not specified in the franchise agreements or should have been aware of such additional provisions. Moreover, the provisions in the post-*Poole* franchise agreements incorporating "all prior agreements and negotiations with respect to the 'Dairy Queen' business" clearly would include the negotiations culminating in the settlement agreement. Plaintiffs argue that if the parties had intended for the arbitration clauses contained in the post-*Poole* franchise agreements to cover the settlement agreement they would have referred specifically to the settlement agreement. To impose such a stringent requirement would be contrary to the federal policy favoring arbitration. The post-*Poole* arbitration clauses requiring submission to arbitration of all disputes "arising under, out of, in connection with, or in relation to" the franchise agreements are without question worded broadly enough to include disputes arising under the pre-existing settlement agreement.

Therefore, defendants' motion to stay the claims of Class III members pending arbitration will be **GRANTED** as to those members of Class III who operate under franchise agreements containing arbitration agreements identical or similar to those considered in this motion, and whose franchise agreements were entered into subsequent to the date of the *Poole* settlement agreement, to wit: after March 13, 1974.