[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATION TO COMPEL ARBITRATION
CT Page 540
This is an application to compel arbitration of a commercial dispute pursuant to Conn. General Statutes § 52-410.
The plaintiff TH Corporation is a business enterprise based in Seoul, Korea. For years, the plaintiff has transacted business with the defendant Starter Corporation, a clothing company incorporated in Delaware and based in New Haven, and Starter Far East Ltd., a subsidiary of Starter Corporation. The Starter companies use TH to find factories in Korea and the Philippines that can manufacture articles of clothing that Starter purchases and imports into the United States. TH is compensated for its work on a commission basis.
On February 25, 1993, the plaintiff and Starter Corporation entered into a written Commission Agreement. The Commission Agreement contains an arbitration clause.
During 1993, the plaintiff located manufacturers for a type of water-resistant jacket to the specifications required by Starter Corporation, and Starter placed substantial orders with the manufacturers so identified.
In July of 1993, during the process if importing the jackets into this country, U.S. customs officials notified Starter that several of the garments had failed a laboratory test for water-resistance. Because the tariff provisions for non-water-resistant garments are higher than for water-resistant garments, Starter was required to tender an additional duty to U.S. Customs of about $2 million. U.S. Customs further notified Starter that an investigation of the incorrect classification would continue and might result in further monetary penalties.
Starter notified TH Corporation and the manufacturers of the problem. As a result of negotiations with the manufacturers and with TH, an agreement was reached to "chargeback" a portion of the Customs fees and penalties to each manufacturer involved. The chargeback agreement with each manufacturer was to be fulfilled either by a direct payment from each manufacturer to Starter, or by Starter withholding portions of monies due each manufacturer on subsequent shipments from that manufacturer.
Starter and TH also entered into a chargeback agreement. It is a simple, one page agreement dated November 1, 1993. CT Page 541 Essentially in return for Starter's agreement to continue over four years to do business with TH as its agent at a minimum of the same volume as in 1993, TH agreed to guarantee the chargeback of each manufacturer to Starter up to a total of $4,000,000. In the TH chargeback agreement, however, it is specified that Starter is not entitled to withhold any commission payments to TH in relation to the chargeback arrangement.
The written agreement contains no arbitration clause.
Meanwhile on September 9, 1993, Starter Far East Ltd., formerly called Fair Stock Limited, was incorporated as a Hong Kong Corporation. Starter Far East Ltd. is a subsidiary of Starter Corporation. TH Corporation alleges that Starter Corporation does business as Starter Far East Ltd. and that the two corporations have acted interchangeably in dealing with the plaintiff.[1]
Subsequent to the signing of the chargeback agreement between the plaintiff and Starter, the defendants and the plaintiff continued to do business with one another, most recently under a written agency contract dated January 1, 1996.[2] The written agency contract states that it is between TH Corporation and Starter Far East Ltd, but it is signed by Gary S. Letendre, Vice-President, on behalf of Starter Corporation. This court finds that both Starter Corporation and Starter Far East Ltd. are bound by the 1996 agency contract with TH Corporation.
The 1996 agency contract calls for TH to act as the agent of the defendants for the purchase and shipment of clothing from Asia. Compensation for TH is by commission on the f.o.b. price of the product shipped. The contract contains an arbitration clause that states:
 Any controversy or claim arising out of or relating to this agreement or its breach which does not result amicably by mutual agreement between Starter and Agent shall be exclusively resolved by submission by either party to the American Arbitration Association in the City of New Haven, Connecticut U.S.A. in accordance with the then obtaining rules of the American Arbitration Association, and any judgment rendered by the arbitrators shall be entered in any court having jurisdiction. (Emphasis supplied.)
After the contract was entered into on January 1, 1996, the CT Page 542 parties renegotiated their chargeback arrangement. In a written agreement dated February 15, 1996, the parties extended the payment schedule under the previous chargeback agreement into 1998. The agreement is signed by the President of TH Corporation and by Gary Letendre on behalf of Starter Corporation. Once again, there is no arbitration clause in the renegotiated chargeback agreement.
Both the 1993 and the 1996 chargeback agreements contain no specific references to any written agency contracts between the parties. Both chargeback agreements do contain the following language, related to their continuing business relationship:
 2) Starter must not hold payment for the agreed agency commission to TH Corporation in relation to this chargeback compensation
On January 29, 1998, Starter Corporation advised TH that it was terminating the agency relationship, effective April 29, 1998. Thereafter TH demanded that Starter Corporation d/b/a Starter Far East Ltd. participate in the arbitration of certain outstanding disputes pursuant to the arbitration clause in the 1996 agency contract. When Starter resisted the demand, TH filed this application to compel arbitration.
In describing the dispute in its demand for arbitration, TH summarizes it as follows:
 TH has 1. Paid to Starter $1.1 million in excess of money Starter actually paid U.S. Customs.
 2. Paid $3.042 million to Starter, under the Chargeback Agreements despite Starter's breach of conditions precedent for said payment.
 3. Lost business volumes assured by Starter Corp. in both the November 1993 and February 1996 Chargeback Agreements.
 4. Lost the value of its time and materials invested in the 1998 product as well as the opportunity to market other distributors of product 1998.
The plaintiff argues that the dispute over payments under the chargeback agreement of 1993 is a "claim arising out of or CT Page 543 relating to" the ongoing agency relationship that TH and Starter had over the years that was embodied in the 1996 agency contract and thus is subject to arbitration.
The defendant claims that all of the dispute for which the plaintiff demands arbitration arises out of the Customs duty issue and the chargeback agreements. Since those agreements contain no arbitration clause, the dispute is not arbitrable.
The court finds that neither of these positions is entirely correct.
DETERMINATION OF ARBITRABILITY
In determining whether the arbitration clause in the 1996 agency contract applies to all of this dispute, some of it, or none of it, the court is first presented with the question of whether state or federal law applies. If federal law applies, the court must look to a body of federal substantive law concerning arbitrability, rather than the state law of Connecticut.[3]
The plaintiff corporation is a resident of Korea. The defendants are a Delaware corporation and its Hong Kong subsidiary, with their place of business in Connecticut. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 governs written arbitration agreements that pertain to interstate commerce, defined in that section to mean "commerce among the several States or with foreign nations. . . ." The commercial relationship here falls within this definition. Section 4 of the Act allows a party to a contract containing an arbitration provision to petition a federal or state court for an order compelling arbitration. It further provides that arbitration shall be compelled if (1) the litigants executed a written arbitration agreement regarding a contract involving interstate commerce; and (2) the issue in dispute is within the scope of the agreement. See 9 U.S.C. § 4; accord, Conn. Gen. Stat. §52-410, See Levine v. Advest, Inc., 244 Conn. 732, 748-49 (1998).
Under federal arbitration law, unless there is "clear and unmistakable" evidence to the contrary, the court, not the arbitrator, has the primary authority and responsibility to decide on the arbitrability of the dispute. First Options ofChicago, Inc. v. Kaplan, 514 U.S. 938, 994, 115 S.Ct. 1920,131 L.Ed.2d 985 (1995); accord, Levine v. Advest, Inc., supra, at 749 CT Page 544 (1998) (construing requirements of FAA in state court determinations of arbitrability).
This court finds that the dispute over arbitrability is governed by the Federal Arbitration Act because the contract involves parties to interstate commerce as defined in the Act. Further this court, not the arbitrator, has the obligation to determine the scope of the dispute to be arbitrated.
SCOPE OF THE ARBITRABLE DISPUTE
The fact that the same parties during the course of their business relationship entered into several written agreements, at least one of which provided for arbitration and others of which did not, has previously been considered by courts called upon to determine the scope of an arbitrable dispute pursuant to the Federal Arbitration Act. Arbitrability in such a situation depends upon whether the side agreement remained distinct and separate from the agreement containing the arbitration clause, see Necchi S.p. A. v. Necchi Sewing Machine Sales Corp. ,348 F.2d 693, 698 (2d Cir. 1965), cert. den., 383 U.S. 909, 86 S.Ct. 892,15 L.Ed.2d 664 (1966), or whether the side agreement was one which "cannot be read apart from the other arbitrable contract[s] and must be viewed as a supplement [to those contracts]," seeS. A. Mineracao da Trinidade-Samitri v. Utah International, Inc.,745 F.2d 190, 196 (2d Cir. 1984). In discussing these same principles in labor relations cases involving side agreements to collective bargaining contracts, the courts refer to this distinction as one in which two contracts are "collateral" to one another, in contrast to a situation in which a later contract containing no arbitration provision supplements an earlier "umbrella" agreement containing such a clause. Cornell Universityv. UAW Local 2300, 942 F.2d 138, 140 (2d Cir. 1991).
For a number of reasons, this court finds that the chargeback agreements on the one hand and the 1996 agency contract with its arbitration clause on the other hand are sufficiently independent of and collateral to one another that the disputes over the chargeback arrangement are not subject to arbitration.
First, the chargeback agreements make no specific reference to the agency contract. Knowing that there was a dispute over the import duties, one can fully understand the chargeback agreements without reference to the agency agreement in any of its particulars. While it is true that the chargeback agreements CT Page 545 refer to the ongoing business relationship including a previous volume of business and a commission arrangement, the chargeback agreements, standing alone, appear as fully integrated contracts that are not an adjunct to the agency contract.
Second, to the extent that the chargeback agreements do refer to the ongoing business relationship, the wording of the agreements evidences the intention of the parties to keep a distance and a distinction between the obligation in the chargeback agreements to compensate Starter for the Customs problem and the ongoing agreement in the agency contract to continue to do business. For example, both chargeback agreements contain specific language prohibiting Starter from holding back the regular agency commissions to TH Corporation in relation to the chargeback compensation.
Third, the original 1993 chargeback agreement cannot be "supplemental" to the 1996 agency contract, because the 1993 chargeback agreement predates the 1996 agency contract by more than two years. The plaintiff has made no claim that the chargeback agreements are arbitrable under the arbitration clause in the 1993 commission contract. The plaintiff relies solely on the arbitration clause in the 1996 agency contract for its argument that disputes under the 1993 chargeback agreement are arbitrable. This defies both chronology and logic.
This court finds that the chargeback agreements are entirely collateral to the 1996 agency contract containing the arbitration clause. As the chargeback agreements themselves contain no provision for arbitration, disputes related to the chargeback arrangement are not subject to an order of this court compelling arbitration.
The remainder of the dispute identified by the plaintiff in its demand for arbitration, however, has nothing to do with the chargeback agreements. In the demand for arbitration, the plaintiff TH Corporation alleges that it undertook work related to the Fall 1998 product line but was not reimbursed or compensated for this work. It appears from the evidence that Starter may wish to assert a counterclaim related to allegations that TH did not assist in protecting Starter's product line from counterfeiting. These disputes fall within the scope of the arbitration clause of the 1996 agency agreement.[4]
The application to compel arbitration is denied as to all CT Page 546 issues arising out of the chargeback agreements. The application to compel arbitration is granted, limited solely to the claim of breach of contract in compensating the plaintiff for work on the Fall 1998 product line, and any properly filed counterclaims of the defendant.
It is so ordered.
Patty Jenkins Pittman Judge of the Superior Court