863 F.2d 315
 J.J. RYAN & SONS, INC. Plaintiff-Appellee,
v.
RHONE POULENC TEXTILE, S.A.; Rhone Poulenc Fibers, S.A.;
Rhodia, A.G.; Sodetal, S.A.; Rhone Poulenc,
S.A., Defendants-Appellants (Two Cases).
J.J. RYAN & SONS, INC. Plaintiff-Appellant,
v.
RHONE POULENC TEXTILE, S.A.; Rhone Poulenc Fibers, S.A.;
Rhodia, A.G.; Sodetal, S.A.; Rhone Poulenc,
S.A., Defendants-Appellees.
 Nos. 87-1759, 87-1760 and 88-1501.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 22, 1988.
Decided Dec. 13, 1988.
 
 Ellis Murray Johnston, II (Donald L. Ferguson, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., on brief), for defendants-appellants.
 William B. McGurn, III (Douglas Glucroft, Cleary, Gottlieb, Steen & Hamilton, New York City, Albert Q. Taylor, Jr., Joseph E. Major, Leatherwood, Walker, Todd & Mann, Greenville, S.C., on brief) for plaintiff-appellee.
 Before PHILLIPS and ERVIN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 In an action brought by J.J. Ryan & Sons, Inc., against Rhone Poulenc Textile, S.A., and four of its affiliated corporations, the district court retained jurisdiction over the first count of the complaint. It dismissed the remaining seven counts for lack of jurisdiction, holding that the claims they asserted were referable to arbitration. Because the claim asserted in the first count is also arbitrable, we reverse that part of the district court's judgment pertaining to the first count, affirm the reference of the other counts to arbitration, and remand the case for further proceedings.
 
 
 2
 * For many years Ryan has imported products manufactured by Rhone's affiliates, which are Rhone Poulenc Textile, S.A., Rhone Poulenc Fibers, S.A., Sodetal, S.A., all French corporations, and Rhodia, A.G., a German corporation. In 1984 a company owned by the two stockholders of Ryan entered into exclusive distribution agreements with each of the Rhone affiliates and assigned the contracts to Ryan. The four contracts are essentially the same. They provided that Ryan would be exclusive importer of certain products made by the affiliates, that Ryan would not sell competing products, that either party could terminate after notice, that prices and terms would be determined by agreement at the time of confirmation of each purchase order, that French law would govern with respect to the French affiliates and German law with respect to the German affiliate, and that all disputes would be arbitrated. The distribution agreements were implemented by separately negotiated purchase orders. Also, Ryan and the affiliates entered into security agreements covering Ryan's inventory and accounts receivable. South Carolina law applied to the security agreements.
 
 
 3
 Rhone later wanted its affiliates to undertake distribution of their products. In 1986 it made an offer to purchase Ryan, but the parties could not agree on the value of Ryan's goodwill. Ryan alleges that Rhone threatened to terminate the exclusive distribution agreements if Ryan did not accede to Rhone's valuation of Ryan's goodwill.
 
 
 4
 Ryan filed suit alleging the following causes of action: (I) civil conspiracy, (II) unfair trade practices, (III) intentional and tortious interference with contract, (IV) conversion, (V) abuse of process, (VI) libel, (VII) defamation, and (VIII) injurious falsehood. Ryan alleges that Rhone caused its affiliates: (1) to terminate the distribution agreements, (2) to cancel confirmed purchase orders, (3) to convert Ryan's inventory held in warehouses, (4) to instruct Ryan's customers not to pay invoices to Ryan, (5) to make defamatory remarks that Ryan was in default, and (6) to freeze Ryan's factoring accounts with its bank. Rhone and its affiliates moved to dismiss because the complaint alleged claims subject to the arbitration clauses in each of the distribution contracts.
 
 
 5
 The district court retained jurisdiction over the conspiracy count. It dismissed the remaining counts because they involved disputes that the parties contracted to arbitrate.
 
 II
 
 6
 Ryan asserts that the district court erred in dismissing counts two through eight for lack of subject matter jurisdiction. It relies on a provision of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. Sec. 1330, which confers jurisdiction on the district court of civil actions against a foreign state. The parties agree that Rhone and its affiliates should be considered a "foreign state" as defined by 28 U.S.C. Sec. 1603(a) & (b) because the French government owns a majority of Rhone's shares.
 
 
 7
 Section 1330 does not preclude reference to arbitration. The United States has acceded to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (1970), 3 U.S.T. 2517, T.I.A.S. No. 6997, reprinted following 9 U.S.C. Sec. 201. To implement the Convention, Congress authorized district courts to direct arbitration in accordance with the parties' agreement. 9 U.S.C. Secs. 201, 206. See generally Scherk v. Alberto-Culver Co., 417 U.S. 506, 520-21 n. 15, 94 S.Ct. 2449, 2457-58 n. 15, 41 L.Ed.2d 270 (1974). The Convention and its implementing statutes authorized the district court to exercise the jurisdiction conferred by 28 U.S.C. Sec. 1330 to determine whether the parties contracted to arbitrate their disputes. Having determined that counts two through eight involved disputes that were referable to arbitration, the district court properly applied Article II(3) of the Convention and referred the parties to arbitration.[1]
 
 III
 
 8
 Ryan also questions appellate jurisdiction over Rhone's assignment of error to the district court's ruling that the conspiracy alleged in count one is not referable to arbitration. Ryan relies on Gulfstream Aerospace Corp. v. Mayacamas Corp., --- U.S. ----, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988), in which the Supreme Court overruled cases establishing the anachronistic Enelow- Ettelson doctrine. Without recounting the intricacies of this no longer viable doctrine, it is sufficient to note that it provided the rationale for determining whether an order staying litigation pending arbitration is appealable under 28 U.S.C. Sec. 1292(a)(1). See Garner Lumber Co. v. Randolph E. Valensi, Lange, Inc., 513 F.2d 1171, 1172 (4th Cir.1975).
 
 
 9
 Nevertheless, the Court's decision to overturn the Enelow-Ettelson, doctrine was not intended to bar interlocutory appeals of orders that (1) "have the practical effect of granting or denying injunctions" and (2) "have 'serious, perhaps irreparable consequence.' " Gulfstream, 108 S.Ct. at 1142-43. The Court explained that in these instances section 1292(a)(1) will continue to provide appellate jurisdiction.
 
 
 10
 The denial of Rhone's motion with respect to count one satisfies the two requirements that the Court explained. First, an order refusing to stay proceedings and to compel arbitration has the practical effect of denying an injunction, although it is not expressed in such terms. See B & R Assocs. v. Dependable Ins. Co., 835 F.2d 526, 528 (4th Cir.1987); Garner Lumber Co., 513 F.2d at 1172.
 
 
 11
 There can be no doubt that a court's refusal to give effect to an arbitration clause has a "serious, perhaps irreparable, consequence"--the second of the two requirements for interlocutory appeal found in Gulfstream. In a case where the district and appellate courts had declined to enforce an arbitration clause involving international trade, the Supreme Court reversed, saying:
 
 
 12
 A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved.
 
 
 13
 A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes, but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. (Footnote omitted).
 
 
 14
 Scherk, 417 U.S. at 516-17, 94 S.Ct. at 2455-56. The Supreme Court has recently reiterated the serious consequences of failing to enforce international arbitration agreements. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 638-39, 105 S.Ct. 3346, 3359-60, 87 L.Ed.2d 444 (1985).
 
 
 15
 We conclude that the court's denial of Rhone's claim that the issues alleged in count one should be arbitrated is appealable under section 1292(a)(1). Cf. Kansas Gas & Electric Co. v. Westinghouse Electric Corp., 861 F.2d 420, 422 (4th Cir.1988) (Gulfstream does not preclude appeal of an order denying domestic arbitration).
 
 
 16
 There is no problem with appellate jurisdiction to review the order dismissing counts two through eight. The district court directed entry of a final judgment as to these counts pursuant to Federal Rule of Civil Procedure 54(b).
 
 IV
 
 17
 Ryan and the Rhone affiliates agreed to arbitration by including in their distribution contracts a clause recommended by the International Chamber of Commerce, which provides: "All disputes arising in connection with the present contract shall be finally settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the Rules."[2]
 
 
 18
 The distribution contracts did not stipulate the price of imports or Ryan's compensation. They made no reference to security agreements. Instead, the distribution contracts simply provided: "The price and terms of all products listed above shall be by agreement of the parties simultaneous with or before confirmation of the purchase order." The importation of products, Ryan's compensation, and the affiliates' security interests were accomplished by separate purchase orders, compensation letters, and security agreements which do not contain an arbitration clause. Ryan argues that because these separately negotiated agreements have no arbitration clause, disputes involving them are not referable to arbitration.
 
 
 19
 To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claim are within the scope of the arbitration clause, regardless of the legal label assigned to the claim. Mitsubishi Motors, 473 U.S. at 622 n. 9, 105 S.Ct. at 3551 n. 9. Moreover, the adoption and implementation of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Sec. 201 note, requires the federal policy in favor of arbitration to apply "with special force in the field of international commerce." Mitsubishi Motors, 473 U.S. at 631, 105 S.Ct. at 3356. The Court has emphasized:
 
 
 20
 [C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement, even assuming that a contrary result would be forthcoming in a domestic context.
 
 
 21
 Mitsubishi Motors, 473 U.S. at 629, 105 S.Ct. at 3355.
 
 
 22
 The district court properly applied these precepts to counts two through eight and held that they were referable to arbitration. It rejected Ryan's argument that because the purchase orders, compensation agreements, and security agreements did not contain arbitration clauses, disputes involving them were not subject to arbitration. It found upon reference to the distribution agreements and the manner in which the parties conducted their business that the purchase orders, compensation agreements, and security agreements implemented the distribution agreements. These findings are amply supported. Without the ancillary agreements pertaining to the details of actual importation of the affiliates' products, the exclusive distribution agreements would be largely illusory.
 
 
 23
 The district court, in accordance with principles approved by the Supreme Court, examined each of Ryan's causes of action in counts two through eight to determine whether the factual allegations underlying the claims and defenses were within the scope of arbitration regardless of the legal labels given the causes of action. Count two alleged that the termination of the distribution agreements, cancellation of purchase orders, conversion of Ryan's inventory, bank accounts and receivables, and institution of arbitration proceedings constitute unfair, deceptive acts in violation of South Carolina's Unfair Trade Practices Act. Rhone and the affiliates assert that termination and cancellation were in accordance with contractual rights, the alleged conversion of Ryan's assets was enforcement of the security agreements, and resort to arbitration was to recover money allegedly due from Ryan under the distribution contracts and their ancillary agreements. Manifestly, the district court properly concluded that the factual allegations of the dispute about unfair trade practices arose "in connection with" the distribution contracts and were referable to arbitration.
 
 
 24
 The third count alleged that Rhone interfered with Ryan's contracts with the affiliates by procuring termination of the contracts without justification and that it interfered with Ryan's contracts with warehousemen and customers. Again, since the dispute over the termination of the contracts and exercise of the security agreements involved factual issues arising in connection with the contracts, the district court properly referred the third count to arbitration.
 
 
 25
 The fourth cause of action alleges conversion in violation of the Uniform Commercial Code. The district court found that this dispute involved the enforcement of security interests and properly referred it to arbitration.
 
 
 26
 The fifth count alleged abuse of process because Rhone caused its affiliates to institute wrongful arbitration proceedings in France. The district court, finding the factual basis of this count was an effort by Rhone and the affiliates to recover money allegedly due from Ryan under the contracts, properly referred this dispute to arbitration.
 
 
 27
 The sixth count alleged libel because Rhone and the affiliates maliciously sent untrue notices to warehousemen, customers, shippers, and banks that Ryan had defaulted on its security agreements. Clearly the dispute over the steps taken to enforce security agreements arose in connection with the contracts, and the district court did not err by referring it to arbitration.
 
 
 28
 The seventh count alleged defamation largely for the same reasons set forth in the sixth count charging libel. The dispute involving this count was properly referred to arbitration.
 
 
 29
 The eighth count alleged injurious falsehoods based on virtually the same allegations stated in count six (libel) and count seven (defamation). The district court found that this cause of action dealt primarily with the actions taken by the affiliates to protect their security interests after Ryan allegedly began withholding payments. The district court correctly concluded that these matters are referable to arbitration because they arose out of the performance of the distribution contracts and their implementing agreements.
 
 
 30
 Ryan cites a number of cases in which arbitration was denied. Most are factually dissimilar and need no comment, but one bears enough resemblance to the present case to require discussion. In Necchi v. Necchi Sewing Machine Sales Corp., 348 F.2d 693 (2d Cir.1965), the court dealt with a dispute between international traders whose exclusive distribution contract contained an arbitration clause for "[a]ll matters, disputes or disagreements arising out of or in connection with this Agreement." On an admittedly meager record, the court narrowly construed the clause not to apply to disputes arising out of "the working relationship between the parties." 348 F.2d at 698.
 
 
 31
 We cannot accept Necchi 's restrictive view of international arbitration. Necchi was decided before Congress enacted legislation implementing the Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Secs. 201-08. Moreover, the court of appeals did not have the benefit of the Supreme Court's decisions explaining the principles and policies governing enforcement of agreements to arbitrate disputes arising in international trade. See Mitsubishi Motors, 473 U.S. at 628-31, 105 S.Ct. at 3354-56; Scherk, 417 U.S. at 515-19, 94 S.Ct. at 2455-57. Possibly for these reasons Necchi attached no special significance to the fact that the dispute involved international trade. Also, the court of appeals rested its decision primarily on a bare bones description of the claims for which arbitration was sought without addressing factual allegations underlying the claims as prescribed in Mitsubishi Motors, 473 U.S. at 622 n. 9, 105 S.Ct. at 3351 n. 9.
 
 V
 
 32
 Ryan alleged that Rhone acted in concert with its affiliates and caused them to terminate the contracts and take other actions detrimental to Ryan. Although Rhone was not a party to the distribution contracts, it is willing to submit Ryan's disputes with it to arbitration. Ryan contends, however, that because it had no contractual relations with Rhone, the district court erred in referring its claims against Rhone to arbitration.
 
 
 33
 When the charges against a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement. As the Fifth Circuit explained under similar circumstances, "If the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." Sam Reisfeld & Son Import Company v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976). The same result has been reached under a theory of equitable estoppel. See McBro Planning and Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir.1984). The district court properly included in its reference to arbitration Ryan's disputes with Rhone that are the subject of counts two through eight.
 
 VI
 
 34
 Count one alleged a conspiracy between Rhone and its affiliates to destroy Ryan's business and goodwill. The overt acts are: (1) termination of the distribution agreements, (2) cancellation of purchase orders, (3) conversion of Ryan's assets, and (4) institution of arbitration proceedings.[3] In reaching its conclusion that the claim stated in count one was not arbitrable, the court relied on Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir.1983), which held that the phrase "arising hereunder" is narrower in scope than the phrase "arising out of or relating to." The district court concluded that the phrase "in connection with" was similar to "arising hereunder." It then held that the clause in Ryan's contracts with the affiliates, which called for arbitration of all "disputes arising in connection with" the distribution contracts should be "somewhat narrowly read." In this manner, the district court distinguished Mitsubishi Motors, 473 U.S. at 624-40, 105 S.Ct. at 3352-61, which broadly construed an arbitration clause. The Mitsubishi clause provided for the arbitration of all "disputes, controversies or differences which may arise between [the parties] out of or in relation to" the parties' agreement. 473 U.S. at 617, 105 S.Ct. at 3349.
 
 
 35
 The difference between the phrases "in connection with" and "may arise out of or in relation to" is largely semantic.[4] Any difference is immaterial in view of the Supreme Court's admonition that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The International Chamber of Commerce's recommended clause which provides for arbitration of "[a]ll disputes arising in connection with the present contract" must be construed to encompass a broad scope of arbitrable issues. The recommended clause does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.
 
 
 36
 The fact that count one alleges a conspiracy to harm Ryan does not remove the dispute from the scope of arbitration. In Mitsubishi Motors, 473 U.S. at 624, 105 S.Ct. at 3352, which construed an arbitration agreement between international traders, the Supreme Court held that a claim for damages resulting from a conspiracy to violate the Sherman Act was arbitrable.
 
 
 37
 Analysis of the four overt acts alleged in count one establish that the disputes involving them arose in connection with the distribution agreements:
 
 
 38
 (1) The termination of the distribution agreements refers to agreements that provide for termination on notice and contain the arbitration clauses.
 
 
 39
 (2) The purchase orders cancelled were transactions to which the distribution agreements refer.
 
 
 40
 (3) The conversion of assets involves the enforcement of security agreements that were incidental to the transactions contemplated by the distribution agreements.
 
 
 41
 (4) The arbitration proceedings refer to arbitration pending before the ICC that Rhone and its affiliates instituted to recover money allegedly due from transactions conducted pursuant to the distribution agreements. The dispute was submitted to arbitration under the same clauses involved in this case.
 
 
 42
 The judgment referring the disputes involved in counts two through eight to arbitration and the dismissal of these counts is affirmed. The denial of arbitration of the dispute that is the subject of count one and the court's retention of jurisdiction of this count for trial is reversed. We remand the case with instructions to decline to exercise jurisdiction over count one, other than to refer it to arbitration, and then to dismiss this action.
 
 
 
 [1]
 Article II(3) of the Convention provides:
 The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.
 
 
 [2]
 European international traders most frequently designate the International Chamber of Commerce to administer their arbitration agreements. See Ulmer, Drafting the International Arbitration Clause, 20 Int'l Law. 1335, 1336 (1986). One of Ryan's two stockholders lives in Geneva. Ryan's affiliated company that entered into the distribution agreements and then assigned them to Ryan maintains an office in Geneva
 
 
 [3]
 The cause of action stated in count one is as follows:
 Plaintiff would allege that Defendants, collectively and individually, entered into a combination scheme and conspiracy to terminate the exclusive distribution agreements with J and J Ryan, Inc. with the malicious purpose, design and intent of destroying Plaintiff's business and its goodwill. Plaintiff would further show that Defendants' actions in terminating the agreements were actuated with the ulterior motive of forcing Plaintiff's shareholders to accept R-P's revised offer, and that such terminations were against equity and good conscience. Plaintiff would further show that Defendants have conspired between and among themselves and others to cancel existing, separately negotiated purchase order contracts and to freeze and convert Plaintiff's inventory, bank accounts, receivables, and business with the same motive and intent. Likewise, Defendants' wrongful filing of arbitration proceedings against Plaintiff constitutes a further overt act in connection with the conspiracy.
 
 
 [4]
 "Connection" has been defined as the "relation between things one of which is bound up with, or involved in, another." 2 The Oxford English Dictionary 839 p 3 (1933)