**PROGRAPH INTERNATIONAL INC., a Nova Scotia corporation; Prograph, Inc., a California corporation; Pictorius Incorporated, a Nova Scotia corporation; Philip Cox; and Paul Davies, Petitioners,**

v.

**Ralph BARHYDT, Respondent.**

**No. C–96–0641 WHO.**

United States District Court, N.D. California.

May 31, 1996.

Jan T. Chilton, Kristine H. Kim, Severson & Werson, San Francisco, CA, for Petitioners.

Stephen A. Fraser, Stephen A. Fraser Law Offices, Sausalito, CA, for Respondent.

## OPINION AND ORDER

ORRICK, District Judge.

In this action, petitioners Prograph International Inc. ("PII"), Prograph, Inc., Pictorius Incorporated ("Pictorius"), Philip Cox, and Paul Davies move (1) to compel respondent Ralph Barhydt ("Barhydt") to arbitrate all disputes arising from the termination of Barhydt's employment by PII, (2) for a preliminary injunction enjoining Barhydt from litigating his claims against them pending arbitration and the Court's confirmation of any arbitration award, and (3) to exclude this case from the Court's normal case management procedures. For the reasons hereinafter set forth, the Court grants all of petitioners' motions.

## I.

On or about January 6, 1994, Barhydt and PII entered into a written employment agreement containing arbitration and mediation clauses. The clauses read in relevant part:

16.01 Dispute Resolution

(a) Mediation

> (i) Any dispute or difference between the parties in connection with this agreement shall be referred to non binding mediation....

\* \* \* \* \* \*

> (iii) If the mediator fails to resolve the dispute within one day, the matter will be referred to arbitration.

(Cox Decl., Ex. A at 16.)

On September 8, 1995, Barhydt filed a complaint in the Superior Court for the County of Marin, Case No. 163347 ("Marin Action"), against PII and the other petitioners in this action, as well as against other defendants. (Kim Decl., Exs. B and C.) Barhydt alleges causes of action for breach of a written contract, bad faith breach of an employment agreement, demand for an accounting, fraudulent conveyance, breach of a fiduciary duty, intentional infliction of emotional distress, fraud, and deceit. Barhydt alleges, *inter alia*, that PII terminated him without cause on March 12, 1994, and breached the employment contract by failing to pay him approximately $350,000 in severance pay, as required by paragraph 11.01(b)(i) of the employment agreement. Barhydt also separately alleges that defendants in the Marin Action breached their fiduciary duty to the shareholders of PII by failing to disclose their separate financial dealings through Pictorius, in which they allegedly engaged for personal profit at the expense of PII shareholders. Barhydt also alleges that assets were fraudulently conveyed from PII to Pictorius.

Petitioners filed suit in this Court on February 20, 1996. They seek an order (1) compelling Barhydt to arbitrate all claims against them in the Marin Action; (2) enjoining Barhydt from litigating those claims in the Marin Action against petitioners pending arbitration and confirmation of any arbitration award by this Court; and (3) exempting this case from the usual case management and discovery procedures.

The parties have stipulated to arbitration of Barhydt's claims against petitioners, with a one-day mediation preceding arbitration. (*See* Stipulated Order Compelling Arbitration ("Stipulated Order"), filed simultaneously with this Opinion.) The parties have also stipulated to certain discovery, which is to take place after the mediation and prior to the arbitration. (*Id.*) Barhydt, however, also argues that (1) all parties to the state court action should be included in the arbitration, and (2) that Barhydt should receive the benefits of the discovery provisions of this Court and, therefore, the case should not be exempted from case management procedures. In the interest of completeness, the Court issues this Opinion and Order addressing all issues brought before the Court by petitioners.

## II.

### A.

Petitioners contend that the arbitration agreement is enforceable by this Court pursuant to article II of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"). The parties have stipulated that PII is a Canadian corporation and Barhydt is a citizen of the United States, residing in California. Article II provides:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

> 2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

> 3. The court of a Contracting State, when seized of an action in a matter in

respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Convention, art. II, attached to 9 U.S.C. § 201 (West Supp.1996). Canada and the United States are listed as signatories of the Convention. *See Id.* at 318–19.

Section 202 provides that: "An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial ... falls under the Convention." 9 U.S.C. § 202. Section 203 provides that the district courts shall have original jurisdiction of an action falling under the Convention, without regard to the amount in controversy. 9 U.S.C. § 203.

■ Article II, § 3, of the Convention "imposes a mandatory duty on the courts of a Contracting State to recognize and enforce an agreement to arbitrate...." *Riley v. Kingsley Underwriting Agencies, Ltd.,* 969 F.2d 953, 959 (10th Cir.1992). When asked to enforce an agreement under the Convention, the Court performs a "very limited inquiry" to decide the following four questions (hereinafter referred to as the "Riley factors"):

(1) Is there an agreement in writing to arbitrate the subject of the dispute?

(2) Does the agreement provide for arbitration in the territory of the signatory of the Convention?

(3) Does the agreement arise out of a legal relationship whether contractual or not, which is considered as commercial?

(4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states?

*Id.; Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186–87 (1st Cir.1982). "If these questions are answered in the affirmative, a court is *required* to order arbitration" unless the court finds the agreement to be null and void, inoperative, or incapable of being performed. *Riley,* 969 F.2d at 959 (citation

omitted). The Court now examines the *Riley* factors.

### 1.

The parties have stipulated that there is a written agreement to arbitrate. The only question is whether the arbitration agreement covers all of Barhydt's claims, and whether it can be applied to all of the defendants in Barhydt's state court action. The Court will address the scope of the arbitration agreement later in this Opinion.

### 2.

■ The arbitration agreement does not expressly identify the forum for arbitration. The Ninth Circuit, however, has affirmed a district court's decision to compel arbitration in the United States under the Convention, where an international arbitration clause did not state the place at which arbitration was to occur. *Bauhinia Corp. v. China Nat'l Mach. & Equip. Import & Export Corp.,* 819 F.2d 247, 250 (9th Cir.1987) ("In the absence of a term specifying location, a district court can only order arbitration in its district.... [S]ection 206 [of 9 U.S.C.] does not permit a court to designate a foreign forum when the agreement fails to designate a place.") Moreover, the parties have stipulated to arbitration in California. Thus, this Court finds that the arbitration agreement provides for arbitration in the United States, a signatory country of the Convention.

### 3.

■ Section 202 provides that legal relationships considered as "commercial" include "a transaction, contract, or agreement described in section 2 of this Title." Section 2 provides for enforceability of a written arbitration provision in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section 2 applies to all contracts that Congress could regulate under the full sweep of its Commerce Clause powers. *Allied–Bruce Terminix Cos. v. Dobson,* —— U.S. ——, ————, 115 S.Ct. 834, 839–40, 130 L.Ed.2d 753 (1995). There can be no doubt that the contract between PII and Barhydt, involving employment of a United States citizen working in this country for a foreign corporation, involves interstate or foreign

commerce. The parties have so stipulated. Thus, the Court finds that the arbitration agreement arises out of a legal relationship that is considered commercial within the meaning of the Convention.

### 4.

The parties have stipulated that PII is a Canadian corporation, incorporated in Nova Scotia, and with its principal place of business there. The Court finds that this prong of the test is clearly met.

■ Having answered the questions in the *Riley* factors in the affirmative, the Court, pursuant to Article II, § 3 of the Convention refers the parties to arbitration, "unless ... the said agreement is null and void, inoperative or incapable of being performed." This language is to be interpreted narrowly "to encompass only those situations—such as fraud, mistake, duress, and waiver—that can be applied neutrally on an international scale." *Ledee,* 684 F.2d at 187 (citation omitted). The parties have consented to arbitration. The Court finds that the arbitration agreement is legally effective.

### B.

■ The Court now turns to the scope of the arbitration agreement. The strong federal policy in favor of arbitration applies "with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 631, 105 S.Ct. 3346, 3356, 87 L.Ed.2d 444 (1985). The arbitration agreement provides for arbitration of "[a]ny dispute or difference between the parties in connection with this agreement." (Cox Decl., Ex. A.) This Court must decide whether all of the claims against petitioners in the Marin Action fall within the scope of the arbitration clause.

In *Mitsubishi,* the clause at issue provided for arbitration of "[a]ll disputes, controversies, or differences which may arise between [the parties] out of or in relation to" the parties' international agreement for the sale of vehicles. 473 U.S. at 617, 105 S.Ct. at 3349 (internal quotation marks omitted). The Supreme Court held that this arbitration clause was broad enough to require that one

parties' antitrust claims against the other be sent to arbitration. *Id.* at 628–29, 105 S.Ct. at 3354–55. The Court also stated that "insofar as the allegations underlying the statutory claims touch matters covered by the [agreement], the Court of Appeals properly resolved any doubts in favor of arbitrability." *Id.* at 624 n. 13, 105 S.Ct. at 3352 n. 13 (citation omitted).

In *J.J. Ryan & Sons, Inc. v. Rhone–Poulenc Textile, S.A.,* 863 F.2d 315 (4th Cir. 1988), the Fourth Circuit examined language very similar to that at issue here. There, the arbitration clause provided for arbitration of "[a]ll disputes arising in connection with the present contract." *Id.* at 321. The court found that this arbitration clause in the parties' product distribution agreement was broad enough to cover allegations of conspiracy to destroy one party's business. The court noted that the arbitration clause language conformed to that recommended by the International Chamber of Commerce, and that it

> must be construed to encompass a broad scope of arbitrable issues. The recommended clause does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between the parties having a significant relationship to the contract regardless of the label attached to the dispute.

*Id.*

Keeping in mind the broad construction of arbitration clauses in international agreements, the Court now decides whether all of Barhydt's claims fall within the scope of the arbitration clause.

■ Barhydt's first three claims—for breach of written contract, bad faith breach of contract, and intentional infliction of emotional distress—all stem from Barhydt's alleged wrongful termination, and are clearly in connection with the employment agreement. The Court finds that these claims fall squarely within the scope of the arbitration clause, and are clearly arbitrable.

■ The same is true of Barhydt's seventh and eighth claims for fraudulently inducing him to move to California and to sign the final version of the employment

agreement. Barhydt does not claim that he was fraudulently induced into signing the arbitration clause, but that he entered into the employment agreement, as a whole, only because PII and the other defendants concealed from him their intent to breach the agreement and fire him as soon as possible. (Kim Decl., Ex. B, Am.Compl. ¶¶ 63–66.) A claim of fraudulent inducement to enter into a contract that happens to contain an arbitration clause is required to be referred to arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967).

 The fourth, fifth, and sixth causes of action are more problematic. These causes of action allege derivative claims for fraudulent conveyance of assets from PII to Pictorius, and for breach of fiduciary duty. These claims are clearly based on Barhydt's status as a shareholder of PII and, at first glance, they would seem not to fall within the scope of the arbitration agreement. The fifth claim, however, expressly alleges that Pictorius is the successor-in-interest or assignee of PII and is, thus, liable for the obligations of Barhydt's employment agreement. The sixth claim alleges that Barhydt is a creditor of PII by virtue of the employment agreement and is, therefore, entitled to bring a claim for fraudulent conveyance. These claims are thus intertwined with, and in connection with, the employment agreement. Moreover, Barhydt does not object to these claims being sent to arbitration. Thus, the Court finds that these claims will also be arbitrated. The Court finds that all of Barhydt's claims fall within the scope of the arbitration agreement.

### C.

 The remaining issue before the Court is to determine the parties that must participate in the arbitration. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Obviously, Barhydt and PII, the signatories of the employment agreement, must be ordered to arbitrate Barhydt's claims against PII.

The Ninth Circuit has held that, pursuant to the strong federal policy favoring arbitration, "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles." *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185, 1187 (9th Cir.1986) (citations omitted). In that case, the court affirmed the district court's dismissal in favor of arbitration and rejected defendant's arguments that his claims against employees of the signatory of the arbitration agreement were not arbitrable. Other courts have also held that a nonsignatory officer, agent or representative of one of the parties to an arbitration agreement may compel the other party to arbitrate claims against him or her arising from or in connection with that agreement. *See, e.g. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1121–22 (3d Cir.1993) (citations omitted) ("Because a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements.").

 Petitioners Cox and Davies are identified in Barhydt's complaint as directors of PII. Barhydt expressly alleges that Cox and Davies took acts that made them liable for PII's alleged breach of the employment agreement. (Kim Decl., Ex. B, Am.Compl. ¶¶ 27(c) and (f), 32, 35, 36.) Thus, the Court finds that the arbitration will include Cox and Davies.

 The Court now turns to petitioner Prograph Inc., a wholly owned subsidiary of PII. Agency principles have been held to permit nonsignatory corporations to compel arbitration under arbitration clauses signed by their corporate parents, subsidiaries, or affiliates, at least when the allegations against the nonsignatory corporation do not differ substantially from those against its signatory affiliate. *Pritzker,* 7 F.3d at 1122. Barhydt alleges no particular allegations against Prograph Inc., lumping it together with the general allegations against all defendants. Thus, his allegations against Prograph Inc. cannot differ substantially from his allegations against PII. The Court finds

that the arbitration will include Prograph Inc.

The remaining petitioner is Pictorius. Barhydt alleges that Pictorius is the "*de facto* successor in interest" to PII, and PII's alter ego. (Kim Decl., Ex. B, Am. Compl. ¶¶ 2, 27(g).) Barhydt seeks to hold Pictorius jointly liable for breach of the employment contract. (*Id.* at 12, ¶ 5.) Nonsignatory successors and alleged alter egos are entitled to compel arbitration under clauses signed by the corporations whose liabilities they are alleged to have assumed. *Pritzer,* 7 F.3d at 1122. The Court finds that the arbitration will include Pictorius.

Nova Scotia Numbered Company 2430985 is not a petitioner to the action before this Court. Nonetheless, the parties have stipulated that the arbitration include all claims between it and Barhydt. It is not clear from the Stipulated Order that the signatories have the authority to bind Nova Scotia Numbered Company 2430985. If the company has no objection to taking its claims to arbitration with petitioners and Barhydt, however, the Court has no objection either.

Barhydt argues that if arbitration is to proceed, all of the remaining parties to the state action also should be required to participate. He cites no law in support of his argument, but argues that it would be more convenient to hear all of the claims among the parties in one forum. The remaining defendants in the state action are: Thomas Pietrzykowski, a director of PII; Gordon Ball, a director of PII; Jeff Waltcher, a director of PII; Coopers & Lybrand, Ltd.; U. Haskell Crocker, a director of PII; Vimac; and Bruce Johnstone, an agent of Vimac. Barhydt alleges that all of these parties are essential to resolving the issues raised in his lawsuit.

Petitioners respond that the Court cannot order to arbitration individuals and corporations that have not been named as parties to the action in this Court, that have not been served with process, and have not been shown to be subject to this Court's personal jurisdiction. Moreover, Barhydt has not shown that these parties are bound by any contractual arbitration clause.

The Court finds that the remaining defendants in Barhydt's state court action cannot be compelled to participate in the arbitration against their wishes.

Notwithstanding the federal policy favoring it, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). We cannot expand the parties' agreement to arbitrate in order to achieve greater efficiency. The Federal Arbitration Act "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983).

*Tracer Research Corp. v. National Envtl. Servs. Co.,* 42 F.3d 1292, 1294 (9th Cir.1994).

The remaining parties in the state court action were free to join in petitioners' motion to compel arbitration. Presumably there is a reason why those parties have not chosen to do so. This court may not order them to arbitrate a dispute that they do not now wish to arbitrate, and that they have not previously agreed to arbitrate.

The unfortunate result in this action is that the two parts of Barhydt's action must proceed separately. This Court has no discretion to order otherwise. The Convention explicitly provides that when the Court finds an agreement to arbitrate within the meaning of the Convention, the Court *shall* refer the case to arbitration. Convention, Art. II, § 3. Moreover, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 20, 103 S.Ct. at 939. The Court finds that this action will proceed to arbitration with all petitioners in this action and Barhydt, but not with the other defendants in Barhydt's state action unless those

parties so desire.[1]

## III.

■ Petitioners seek a preliminary injunction enjoining Barhydt from pursuing his claims against them in state court pending arbitration and the eventual confirmation by this Court of any award entered in the arbitration. Barhydt does not argue against entry of an injunction.

Because petitioners would be irreparably harmed if Barhydt were permitted to continue litigating these claims in state court while the same claims are being arbitrated, this Court grants petitioners' motion for a preliminary injunction. Petitioners would lose all benefit of the arbitration clause if they were required to simultaneously litigate this action against petitioners in state court. Barhydt is hereby enjoined from litigating his claims against petitioners pending completion of the arbitration, and affirmance by this Court of any arbitration award.

## IV.

■ Petitioners request that this case be exempted from the normal case management procedures and discovery procedures. Petitioners argue that by referring this case to arbitration, this Court's job is finished, at least until confirmation of any arbitration award.

Barhydt argues that he would be severely prejudiced if he were prevented from taking discovery. Discovery procedures, however, are not available in arbitration proceedings, absent extraordinary circumstances, or an express agreement between the parties to permit discovery. William W. Schwarzer, A. Wallace Tashima and James M. Wagstaffe, *California Practice Guide: Civil Procedure Before Trial,* § 16:115.4 (1996). Barhydt's alleged need for discovery in order to develop evidence to prove his claims is not an extraordinary circumstance that will permit discovery in aid of arbitration. "Whatever hardship may be caused to the plaintiff if he obtains less discovery than would be available in this court, he accepted the risk of

being placed in that position when he accepted the arbitration clause in the Agreement." *Levin v. Ripple Twist Mills, Inc.,* 416 F.Supp. 876, 880–81 (E.D.Pa.1976).

The Court notes that the Stipulated Order permits a limited amount of discovery to take place prior to arbitration. The Court otherwise grants petitioners' motion to exclude this case from the normal case management and discovery procedures.

## V.

Accordingly,

IT IS HEREBY ORDERED that:

1. Petitioners' motion to compel arbitration is GRANTED. All claims in this action against petitioners are referred to binding arbitration in accordance with the terms of the parties' Stipulated Order compelling arbitration, filed simultaneously with this Opinion. The arbitration will not include any parties who have not expressly stated their desire to arbitrate their disputes with Barhydt.

2. Petitioners' motion for preliminary injunction is GRANTED. Barhydt is hereby enjoined from litigating his claims against petitioners pending completion of arbitration and the Court's confirmation of any arbitration award.

3. Petitioners' motion to exclude this action from the Court's normal case management procedures is GRANTED.

---

1. The Court notes that petitioners and Barhydt have stipulated that the remaining defendants in the state action may join the arbitration if they wish.