I concurred with the following holding in the opinion that this Court today withdraws:
 "Even though First Colonial is not a signatory to the arbitration agreement, the Joneses' claims against First Colonial should be arbitrated because they are founded on and are intertwined with the facts surrounding the underlying contract that contains the arbitration clause. See, Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc., 10 F.3d 753 (11th Cir. 1993) [cert. denied, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994)]; McBro Planning Development Co. v. Triangle Electrical Construction Co., 741 F.2d 342 (11th Cir. 1984). The Joneses' dispute with First Colonial arises out of and is directly related to the loan agreement. In other words, if the Money Tree contract containing the arbitration provision did not exist, neither would the First Colonial insurance contract. One is the product of the other. The facts clearly establish that the Joneses have failed to prove a clear legal right to the order sought."
That original opinion was based upon well-reasoned federal law.[1] This Court now, on its own motion, grants rehearing and reaches a directly contrary result. I therefore dissent.
The Joneses signed a loan agreement with The Money Tree, Inc., in order to purchase an automobile. This loan agreement contained an agreement to arbitrate, which reads, in pertinent part:
 "All disputes, controversies or claims of any kind and nature between creditor and debtor arising out of or in connection with the within agreement
as to the existence, construction, performance, enforcement or breach thereof shall be submitted to arbitration pursuant to the procedures under the following pre-dispute arbitration agreement: *Page 1169 
 "(a) Any dispute, controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in the State of Alabama in accordance with the commercial arbitration rules of the American Arbitration Association (The 'Arbitration Rules of the AAA') and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . ."
(Emphasis added.)
When the Joneses signed the agreement containing the arbitration clause, the loan officer, an employee of Money Tree, sold the Joneses an insurance policy issued by First Colonial Insurance Company. Even though the insurance agreement was separate from the loan agreement, the Joneses were made aware of the specific terms of the agreement, and the premiums for the insurance policy were financed as part of the loan.
The majority now holds that the insurance contract between the Joneses and Colonial Insurance Company was a separate agreement and, therefore, was not subject to the arbitration clause contained in the loan agreement, because the Joneses did not sign the insurance agreement.
The Federal Arbitration Act ("F.A.A."), 9 U.S.C. § 1 et seq., provides, in pertinent part:
 "A written provision in any . . . contract evidencing a transaction involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract."
9 U.S.C. § 2. Under 9 U.S.C. § 3, a party may seek a stay of proceedings pending arbitration and, in order to do so, must show (1) that a valid written arbitration agreement exists; (2) that the issues in the action are referable to arbitration under the agreement; and (3) that the party is not in default in seeking arbitration.[2] Under the provisions of § 2 of the F.A.A., a party must show that the agreement in question involves interstate commerce. Allied-Bruce Terminix Companies,Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753
(1995).
In this particular case, neither party disputes that a valid written arbitration agreement is in existence and that the contract involves interstate commerce. In fact, there could be no argument on that point, because the United States Supreme Court, in Allied-Bruce Terminix held that the F.A.A.'s reach coincided with that of the Commerce Clause. Allied-BruceTerminix, 513 U.S. at 265-66, 115 S.Ct. at 835.
The ultimate question in this case, which I think this Court correctly decided in its original opinion, is whether one must be a signatory to a contract in order for the provisions of the F.A.A. to apply to it. Several federal courts have addressed this issue, and have held, based upon the theory of estoppel, that "[a] signatory was bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were 'intimately founded in and intertwined with the underlying contract obligations.' " Thomson-CSF, S.A.v. American Arbitration Association, 64 F.3d 773, 779 (2d Cir. 1995); see also Sunkist Soft Drinks, Inc. v. Sunkist Growers,Inc., 10 F.3d 753, 757 (11th Cir. 1993), cert. denied,513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); McBro Planning Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342, 344 (11th Cir. 1984); J.J. Ryan Sons, Inc. v. *Page 1170 Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir. 1988).
There was a close relationship between the Joneses and First Colonial, which is evidenced by the fact that the premiums for the policy were paid through the loan, the fact that Money Tree's employee sold the policy simultaneously with the execution of the loan agreement, and the fact that the policy limitations and specific terms were acknowledged in a separate document executed with the loan agreement.
Neither party disputes that the Joneses signed the loan agreement, which references the insurance agreement, and that they did not sign the insurance agreement. The Joneses, however, argue that Money Tree misrepresented the terms of the insurance agreement and that the misrepresentation resulted in the vehicle's being underinsured. Nevertheless, the Joneses accepted $800 from First Colonial for damage to their car.
It appears clear to me that federal courts have been "[w]illing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." Thomson, 64 F.3d at 779.
It is without question that the dispute at issue in this case significantly relates to the loan agreement. The arbitration clause found within the loan agreement provides: "All disputes, controversies or claims of any kind and nature between creditor and debtor arising out of or in connection with the withinagreement . . . shall be submitted to arbitration." In addition to the language found in the arbitration agreement, the record shows that the insurance contract was entered into simultaneously with the loan agreement and that the premiums were included as a part of the loan payments.
I believe the insurance contract in question is "intimately founded in and intertwined with the underlying contract obligations [the loan agreement]." McBro Planning, 741 F.2d at 344. Thus, because of the close relationship between the two agreements, the terms of the arbitration clause found in the loan agreement apply to the insurance agreement.
In summary, the majority rehears this case ex mero motu and holds that the Joneses are clearly entitled to relief, even though it had held originally that the Joneses were clearly not
entitled to the relief they sought. What has changed? Nothing, except that this Court has changed its mind. Although this Court has the power to rehear a case on its own motion, that power should be exercised only in the rarest of circumstances, especially when neither party requests a rehearing and points out wherein the Court has erred.
Moreover, this Court has addressed the question of the scope of an arbitration clause in Ex parte Gates, 675 So.2d 371 (Ala. 1996). In that case, the purchasers of a mobile home sued the vendor of the mobile home, the manufacturer of the mobile home, and the vendor's salesman, alleging fraud in the sale of the mobile home, breaches of warranties, and negligent or wanton installation. The trial court ordered the dispute submitted to arbitration as to all parties, even though the manufacturer and the vendor's salesman were not signatories to the agreement containing the arbitration clause. The plaintiffs asked this Court for a writ of mandamus directing the trial court to set aside its arbitration order. This Court denied the writ, saying:
 "The arbitration clause, quoted above, is very broad; it provides that '[a]ll disputes, claims, or controversies arising from or relating to this Contract or the relationships which result from this Contract, or the validity of this arbitration clause or the entire Contract, shall be resolved by binding arbitration.'
 "The Gateses allege in their complaint that the defendants made misrepresentations and concealed material facts in order to induce them to purchase the mobile home and that they relied on the defendants' misrepresentations in signing the documents to purchase the home. They also allege that the defendants breached warranties made to them at the time of their purchase, and they allege that they have performed all of their obligations under *Page 1171 
their contract with the defendants. Thus, the Gateses' claims are asserted in connection with the installment contract that sets forth the terms and conditions for financing the sale of the mobile home. The contract evidences a transaction involving interstate commerce. Thus, the FAA is applicable and preempts state law.
 "For the reasons stated above, and on the authority of the United States Supreme Court's ruling in Allied-Bruce Terminix, we hold that the trial court did not err in compelling arbitration of the Gateses' claims. The petition for the writ of mandamus is due to be denied."
Gates, 675 So.2d at 374-75. It appears to me that the holding of this Court in Gates, which compelled the buyers of a mobile home to arbitrate their claims against the manufacturer and the vendor's salesman, neither of whom was a signatory to the purchase agreement, is consistent with the federal decisions that I cite in this dissent. Furthermore, Gates has been criticized in the Alabama Trial Lawyers Journal, where Lanny Vines wrote:
 "The Court held [in Gates] that, under Allied-Bruce Terminix Companies v. Dobson, 513 U.S. [265], 115 S.Ct. 834, 130 L.Ed.2d 753 (1995), the arbitration clause was broad enough to require arbitration of all the plaintiffs' claims, including those against [the manufacturer] Palm Harbor, which was not a signatory to the arbitration contract. . . .
". . . .
 "This is another in a growing line of cases extending the right of a defendant to compel enforcement of an adhesion arbitration clause."
Lanny Vines, Recent Civil Decisions, Ala. Trial Law. J., Summer 1996, at 24-26.
Certainly, the parties and those who rely on this Court's decisions, including the public, should have confidence that final decisions of this Court are, in fact, final. That is especially true when the decision is based on sound principles of law, as in this case.
Based on the foregoing, I must respectfully dissent.
HOOPER, C.J., concurs.
[1] Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
[2] The F.A.A. provides, at 9 U.S.C. § 3: "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." See Complaint of Hornbeck Offshore Corp.,981 F.2d 752, 754 (5th Cir. 1993).