FLOYD, Circuit Judge, dissenting: My colleagues conclude that the incorporation of the JAMS Comprehensive Rules and Procedures (“JAMS Rules”) into the parties’ arbitration agreement is a clear and unmistakable delegation of the power to determine the threshold question of ar-bitrability to the arbitrator. I would hold that when, as here, the parties also include a separate provision addressing arbitrability, with reference to a statute that contemplates judicial resolution of the question, the parties have not clearly and unmistakably delegated power to decide this threshold question to the arbitrator. I would further hold that this dispute is not subject to binding arbitration because the dispute neither arises out of nor relates to the agreement containing the arbitration clause. Therefore, I respectfully dissent. I. On July 12, 2012, Simply Wireless and T-Mobile entered into an “Amended & Restated Limited Purpose Co-Marketing and Distribution Agreement for Equipment Sold th[r]ough : -HSN & QVC” . (the “HSN/QVC Agreement”). S.JA. 502. The Agreement provided that “[a]ny claims or controversies .. ■. arising out of or relating to this Agreement (‘Dispute’) shall be resolved by submission to binding arbitration,” and that the “arbitration shall be administered pursuant to the JAMS Comprehensive Rules and Procedures then in effect.” S.J.A. 514. Importantly, it also included a provision stating that “[njotwith-standing any choice of law provision in this Agreement, the parties, agree that the Federal Arbitration Act [ (‘FAA’) ], 9 U.S.C. §§ 1-15, not state law, shall govern the arbitrability of all disputes under this Agreement” (the “FAA clause”). Id. Though the JAMS Rules empower the arbitrator to resolve arbitrability disputes, the FAA contemplates judicial resolution of these questions. The JAMS Rules provide that “[jjurisdictional and arbitrability disputes, including disputes over the . formation, existence, validity, interpretation or scope of the agreement under' which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled- on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.” J.A. 84. The FAA, by contrast, provides that, once a party petitions the court for an order directing arbitration, the “court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the. terms of the agreement.” 9 U.S.C. § 4. . The Supreme Court has made clear that the presumption in favor of arbitration does not apply to the question of “whether the parties have submitted a particular dispute to arbitration....” Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). To the contrary, the Supreme Court has created a presumption in favor of judicial determination of whether the dispute ⅛ arbitrable. Id. Allowing the .courts to decide gateway questions of arbitrability “avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.” Id. at 83-84, 123 S.Ct. 588. Therefore, “[ujnless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.” AT&T Techs., Inc. v. Commc’ns Workers of Am., 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (emphasis added) (citation omitted); see also First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (“Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.” (internal quotation marks, citation, & alterations omitted)); Va. Carolina Tools, Inc. v. Int’l Tool Supply, Inc., 984 F.2d 113, 117 (4th Cir. 1993) (“[T]he general policy-based, federal presumption in favor of arbitration ... is not applied as a rule of contract interpretation to resolve questions of the arbitrability of arbitrability issues themselves.”). With the presumption in favor of judicial determination of whether a dispute is arbi-trable in mind, I would conclude that the parties have not.clearly and unmistakably intended to commit the threshold question of arbitrability to the arbitrator. The parties conspicuously inserted a provision into the Agreement stating that the FAA would govern questions of arbitrability. This insertion is significant. To be sure, as the majority has cited, our sister circuits have held that incorporation of the JAMS Rules or other arbitral rules committing the question of arbitrability to the arbitrator is sufficient to show that the parties clearly and unmistakably intended to do so. See, e.g., Belnap v. Iasis Healthcare, 844 F.3d 1272, 1284 (10th Cir. 2017); Cooper v. WestEnd Capital Mgmt., L.L.C., 832 F.3d 534, 546 (5th Cir. 2016); Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015). But none of these. cases dealt w^th an arbitration clause that directly addressed the question of arbitrability—separate from its incorporation of the JAMS Rules—by expressly stating that, notwithstanding any other choice of law provisions, the FAA would govern such questions. My colleagues do not address the effect of the FAA clause on this question. Presumably, they would conclude that the FAA clause is inapposite, because it merely provides that the FAA, “not state law, shall govern the arbitrability of all disputes under this Agreement.” S.J.A. 514. Although the JAMS Rules are not state law, I would conclude that the insertion of the FAA clause muddies the waters of my colleagues’ analysis. One interpretation of the FAA clause may simply be that the arbitrator, in deciding questions of arbitra-bility, is bound to follow the FAA. But, in my view, an equally plausible interpretation is "that, by separately stating that “the parties agree that the Federal Arbitration Act ... shall govern the arbitrability of all disputes under this Agreement,” the parties did not contemplate that the JAMS Rules would cover this important threshold question of arbitrability. ■ S.J.A. 514. Ultimately, because the insertion of the FAA clause creates more than one reasonable interpretation of the parties’ intent regarding who should decide the question of arbitrability, it cannot be said that the parties clearly and unmistakably intended to submit the question of. arbitrability to the arbitrator. To be clear, I do not disagree with my colleagues’ decision to adopt'the approach of our sister circuits.that have held that “incorporating the JAMS Rules into” ah arbitration agreement can “evidénce[] a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator.” Belnap, 844 F.3d at 1279. Rather, I would conclude that, in this" case, the additional clause mandating that the FAA govern the question of arbitrability is sufficient to call into question the Conclusion that the parties clearly and unmistakably intended to put the question of arbitrability before the arbitrator. For that reason, I would con-elude that the question of arbitrability was properly before the court. II. Having concluded that the question of arbitrability was properly before the court, I would hold that the district court erred in granting T-Mobile’s motion to compel arbitration, because the dispute at issue neither arises out of nor relates to the HSN/QVC Agreement. It is axiomatic that a “party cannot be required to submit to arbitration any dispute which [it] has not . agreed so to submit.” Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011) (internal quotation marks & citations omitted). Nevertheless, “questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,” and under the FAA, “any doubts concerning the scope of arbitrable issues should be resolved-in favor of arbitration....” Moses H. Cone Mem’l Hosp. v. Mercury Constr, Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Thus, the court “may not deny a party’s request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that .covers the asserted dispute.” Long v. Silver, 248 F.3d 309, 316 (4th Cir. 2001) (internal quotation marks & citations omitted). I would hold that such “positive assurance” clearly exists in this case. This Court has “consistently held that an arbitration clause encompassing all disputes ‘arising out of or relating to’ a contract embraces ‘every dispute between the parties having a significant relationship to the contract regardless of the label attached to a dispute.’” Wachovia Bank, Nat’l Ass’n v. Schmidt, 445 F.3d 762, 768 (4th. Cir. 2006) (quoting Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 93 (4th Cir. 1996)); see also Long, 248 F.3d at 316 (“[A] broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a ‘significant relationship’ exists between the asserted claims and the contract in which the arbitration clause is contained.” (citation omitted)). Here, a “significant relationship” between Simply Wireless’s claims and the HSN/QVC Agreement does not exist. A court’s resolution of Simply Wireless’s claims will require no inquiry into the Agreement’s terms, nor even knowledge of the Agreement’s existence.” See Wachovia, 445 F.3d at 768 (holding that the dispute was not' arbitrable in • part because “a court’s resolution of the ... claims [would] require no inquiry into the Note’s terms, nor even knowledge of the Note’s existence.”). Simply Wireless’s claims—which are based on T-Mobile’s alleged- wrongful use of the SIMPLY PREPAID trademark—do not derive from the relationship created by the HSN/QVC Agreement. The dispute would have arisen even if the Agreement did not exist, and the Court would have no need to look at the terms of the Agreement to determine the parties’ trademark rights. T-Mobile argues that the dispute relates to the HSN/QVC Agreement because “T-Mobile’s defense, among others, is that this is a T-Mobile trademark, that the mark is subject to the Agreement’s protections, and that the Agreement prevents Simply Wireless from using or challenging the mark.” Appellee’s Br. 26-27. But this argument requires the Court to accept as true the assertion that the mark belongs to T-Mobile, which'is at the very heart of the dispute. And although Simply Wireless certainly agreed that the marks registered to T-Mobile were the property of T-Mobile, and any dispute arising from or relating to' Simply Wireless’s use of T-Mobile’s registered marks in connection with the HSN/QVC Agreement would be subject to arbitration, it does not follow that Simply Wireless agreed to arbitrate all disputes arising from T-Mobile’s alleged wrongful use of Simply Wireless’s trademarks. T-Mobile also argues that the dispute relates to the HSN/QVC Agreement because Simply Wireless’s factual allegations demonstrating T-Mobile’s willfulness and knowledge related to the parties’ business dealings, through which T-Mobile became aware of Simply Wireless’s extensive use of the mark, and that those dealings were a result of the HSN/QVC Agreement. J.A. 120-21 ¶¶ 42-43; see J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 319 (4th Cir. 1988) (the court must determine whether the “factual allegations underlying the claim are within the scope of the arbitration clause”). However, the Amended Complaint also alleged that Simply Wireless’s use of the SIMPLY PREPAID trademark was well known to others in the industry, including T-Mobile, because Simply Wireless has used it extensively since 2002. J.A. 109 ¶ 19. Thus, the Amended Complaint did not allege that T-Mobile’s knowledge of Simply Wireless’s trademark arose solely because of the parties’ business relationship under the HSN/ QVC Agreement. In short, the Agreement—which was, by-name, a “Limited Purpose” agreement— related only to T-Mobile’s and Simply Wireless’s co-marketing ventures. It bears no significant relationship to Simply Wireless’s trademark infringement claims, which arose out of the competitive relationship between the parties. Therefore, I would hold that this dispute is not subject to mandatory arbitration and should proceed on the merits in the district court. III. Because I conclude that judicial resolution of the question of arbitrability was proper, I respectfully dissent.